244

Akil AL–JUNDI, a/k/a Herbert Scott Deane; Big Black, a/k/a Frank Smith; Elizabeth Durham, Mother and Legal Representative of Allen Durham, deceased; Litho Lundy, Mother and Legal Representative of Charles Lundy, deceased; Theresa Hicks, Widow and Legal Representative of Thomas Hicks, deceased; Alice McNeil, Mother and Legal Representative of Lorenzo McNeil, deceased; Maria Santos, Mother and Legal Representative of Santiago Santos, deceased; Jomo Sekou Omowali, a/k/a Eric Thompson; Vernon LaFranque; Alfred Plummer; Herbert X Blyden; Joseph Little; Robin Palmer; George "Che" Nieves; James B. "Red" Murphy; Thomas Louk; Peter Butler; Charles "Flip" Crowley; William A. Maynard, Jr.; Calvin Hudson; Kimanthi–Mpingo, a/k/a Edward Dingle; and Ken–Du, a/k/a Willie Stokes, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Nelson A. ROCKEFELLER; Russell A. Oswald; Walter Dunbar; John C. Baker; A. C. O'Hara; John Monahan; John C. Miller; Leon Vincent; Karl Pfeil; Robert F. Fischer; Wim Van Eekeren; Vincent Mancusi; John Does Nos. 1–100, Defendants.

No. Civ–75–132.

United States District Court,
W. D. New York.

Oct. 27, 1980.

As Amended Nov. 21, 1980.

Robert I. Cantor, New York City, for plaintiffs.

Samuel H. Gillespie, III, Milbank, Tweed, Hadley & McCloy, New York City, for Rockefeller and Estate of Rockefeller.

John R. Stewart, Asst. Atty. Gen., Albany, N. Y., for NYS defendants.

David E. Flierl, Asst. Atty. Gen., Buffalo, N. Y., for remaining state defendants.

David J. Calverley, Buffalo, N. Y., for defendant Russell G. Oswald.

Brian P. Fitzgerald, Buffalo, N. Y., for defendant Vincent Mancusi.

Thomas M. Whalen, III, Albany, N. Y., for defendant John C. Baker.

Irving C. Maghran, Jr., Buffalo, N. Y., for defendant Karl Pfeil.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

Now before me in this protracted civil rights litigation are three matters (two of which are very closely related): plaintiff's motion under Fed.R.Civ.P. rule 25(a) to substitute the Estate of Nelson A. Rockefeller ("the estate") in the place and stead of defendant Rockefeller, defendant Rockefel-ler's related motion to dismiss and my Order directing plaintiffs to show cause why this action should not be dismissed for failure to comply with my order delivered in open court April 21, 1980 directing plaintiffs to commence discovery within sixty days from such date. I shall treat these issues in the above sequence.

Plaintiffs' motion to substitute the estate for Rockefeller is opposed by all present defendants on grounds of untimeliness. Rule 25(a) requires that a motion to substitute be brought within ninety days from the time a "statement of death" is made upon the record. It is clear that plaintiffs' motion to compel substitution was served on the executors of the estate, through a person authorized by them to receive service, at least by March 18, 1980. The statement of death at issue herein consists of an affidavit sworn to November 7, 1979 by Assistant New York State Attorney General John H. Stewart (then and until my order entered March 22, 1980, representing all defendants) and filed in this court November 13, 1979. However, under Fed. R.Civ.P. rule 5 (incorporated by reference in rule 25(a)), a statement of death is not served when sworn to or when filed with the court, but rather when it is served upon opposing counsel. Defendants in their arguments *assume* that such date was also November 7th; however, Robert I. Cantor, Esq., plaintiffs' attorney, swears that the statement of death was received by Daniel J. Myers, Esq. (another attorney for plaintiffs) on November 28, 1979 and that the envelope containing such suggestion bore a postmark of November 23, 1979. A xerographic copy of what Cantor states to be the envelope in question is attached to Cantor's affidavit; the postmark on such letter contains an "I [love] New York" symbol and thus would appear to have been affixed by the Attorney General's Office rather than by the United States Postal Service. Stewart, in his reply affidavit, does not deny Cantor's claim that the statement of death was not served on plaintiffs by mail until November 23rd. For purposes of this motion, then, I will employ November 23, 1979

as the date of service. Ninety days from November 23rd is February 21, 1980. Cantor claims that he attempted to locate the executors of the estate beginning in January 1980, that such endeavors were unsuccessful and that an assistant in his firm thereupon contacted the law firm of Milbank, Tweed, Hadley & McCloy ("Milbank") in an attempt to serve the executors. Cantor further claims that, after a delay of several days, his assistant was advised by someone at Milbank in early February that the Attorney General represented the estate in connection with this suit. This assertion appears not to have been contraverted by anyone connected with Milbank. Cantor further claims that Stewart orally agreed February 15, 1980 to accept service on behalf of the executors. This last assertion is flatly and vociferously denied by Stewart. It appears that on or before February 15, 1980 Cantor was in possession of the full names and addresses of the executors, had obtained leave from me to serve them by means of a private process server and could have effected timely service. The motion was, however, mailed to Stewart, instead of being served on the executors directly. Stewart claims that he never represented the estate, was not authorized to accept service of process on its behalf and, as noted above, did not agree to accept process. At least the first two assertions appear to be true. The last is flatly controverted by Cantor and clearly cannot be resolved by me on affidavit. If I were to hold a hearing on this issue and conclude that Cantor's version of the facts is correct, I might well conclude that the consecutive statements, by Milbank that Stewart represented the estate and by Stewart that he would accept process, would estop the estate from denying timely service. However, I conclude that such an evidentiary investigation is not needed because the statement of death served by mail November 23rd did not meet the requirements of Fed.R.Civ.P. rule 25(a) and therefore did not start running the ninety–day time period contained therein.

Rule 25(a) states as follows:

"(1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. *The motion for substitution may be made by any party or by the successors or representatives of the deceased party* and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. *Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion*, the action shall be dismissed as to the deceased party." (Emphasis added.)

The rule carefully distinguishes between "parties" and "successors or representatives of deceased parties," and does not mention "deceased parties" themselves. I therefore interpret rule 25 as allowing a motion to substitute to be made either by the estate of the deceased party (presumably acting through counsel for the estate) or by any other party, but *not* by the deceased party herself or himself (acting through counsel). *See, Boggs v. Dravo Corp.*, 532 F.2d 897, 900 (3rd Cir. 1976); *Rende v. Kay*, 415 F.2d 983, 985 (D.C. Cir. 1969). Rule 25 further requires that the statement of death be served "as provided herein" for the service of a motion. I interpret this expression as incorporating the same limitations just referred to as to parties. Stewart in his statement of death described himself as the attorney for the deceased party (and not for other parties) and now declaims vigorously that he was and is not counsel to the estate. Under the interpretation just mentioned of rule 25, these assertions render the statement of death filed by him a nullity.

██ There are at least two additional reasons why the estate should be substituted. First, the statement of death did not list the names of the executors of Rockefeller's estate, although this information

should have been readily available to Stewart. The United States Court of Appeals for the District of Columbia Circuit has held that listing the successors or representatives of the estate when such information was readily available to the person making the statement was necessary to make the statement effective under rule 25, for otherwise an opposing party could be put to an unfair burden of locating and serving the representatives before the ninety–day period expired. *Rende v. Kay, supra,* at 985; *Advisory Committee Note* to rule 25. Although the executors of a prominent public figure like Rockefeller would presumably be less difficult to locate than those of a less well known private individual, it appears from Cantor's affidavit that a substantial amount of time herein was consumed, first, by attempts to locate the executors themselves and then by efforts to contact Milbank, none of which efforts would have been necessary had the statement of death dated November 7, 1979 simply named the executors. For this reason I am persuaded to adopt the reasoning of *Rende.* It has been repeatedly stated and held that the reason rule 25(a) was amended to its current form in 1963 was to avoid the harsh and unfair results that the former inflexible version of rule 25 occasionally mandated. *See, e. g., Advisory Committee Note* to rule 25; *Roscoe v. Roscoe,* 379 F.2d 94, 99 (D.C. Cir. 1967). "[T]he 90–day period was not intended to act as a bar to otherwise meritorious actions." *Staggers v. Otto Gerdau Company,* 359 F.2d 292, 296 (2d Cir. 1966). Adoption of the *Rende* rule would, on the facts of this case, promote this remedial flexibility. *See, National Equipment Rental v. Whitecraft Unlimited,* 75 F.R.D. 507 (E.D.N.Y.1977).

■ Additionally, if the statement filed by Stewart were held to be effective, I would nonetheless hold that a sufficient showing of excusable neglect had been made to qualify for an extension of time under rule 6(b). Such a showing consists of a demonstration of good faith and "some

reasonable basis for noncompliance within the time specified in the rules." 4 Wright & Miller, Federal Practice and Procedure: Civil § 1165, at 622 (1969). In this circuit, especially in the rule 25 context, a successful showing is more easily made when the opposing side has suffered no prejudice. *See, e. g., Yonofsky v. Wernick,* 362 F.Supp. 1005, 1010–15 (S.D.N.Y.1973). Inasmuch as Stewart mailed the motion to substitute to the executors within a few days of its receipt and Milbank (now formally named as the attorney for the estate) had at least some knowledge of it at an even earlier time through the contacts by Cantor's office, no prejudice has been shown or apparently could have resulted.

As I have noted, Cantor by February 15th had the names and addresses of the executors. He could easily have made timely service upon them. Alternatively, he probably could have served the Surrogate of Westchester County and also effected timely service. Instead, he "served" the motion by mailing it to Stewart's office by reason, according to Cantor, of an oral agreement by Stewart to accept service of process. Stewart, as noted above, denies having ever so agreed. Accepting as true Stewart's denial, it appears that Cantor's act was precisely the sort of unfortunate blunder for which rule 6(b) was intended to make amends. Plaintiffs could, on February 15th, have made timely service; that they did not seems clearly due to excusable neglect.

■ The estate further argues that plaintiffs' motion must be denied because service was not made upon all parties. At all times in this litigation prior to March 22, 1980, the Attorney General was counsel to all defendants. Mailing the moving papers to Stewart was sufficient service of the motion under rule 5. The estate further invites me to exercise my discretion as shown in the permissive language of rule 25(a)(1) to refuse to permit the substitution even if technically timely. Although Rockefeller's demise was attended by considerable public-

ity and occurred more than one year prior to the making of the motion to substitute his estate, in view of the quiescent status of this litigation prior to my Memorandum and Order of October 30, 1979 and the total absence of a showing of prejudice to administration or distribution of the estate on account of such delay (*Cf., Anderson v. YungKau*, 329 U.S. 482, 67 S.Ct. 428, 91 L.Ed. 436 (1947)), I decline to exercise such discretion.

For these reasons, plaintiffs' motion to substitute the Estate of Nelson A. Rockefeller in his place hereby is ORDERED granted. Such disposition moots the motion by Rockefeller for dismissal, which motion is accordingly hereby ORDERED denied.

█ The final matter before me involves my Order to Show Cause dated July 8, 1980, wherein counsel for plaintiffs was ordered to show cause before me August 4, 1980 why this action should not be dismissed for failure to commence discovery proceedings as directed by my order in open court April 21, 1980. Counsel for plaintiffs (who had earlier moved for leave to withdraw on the grounds that he was unable adequately to represent plaintiff class herein) stated, and offered some proof, that he has been engaged in attempting to locate new counsel for plaintiff class. However, his only stated reason for his complete failure to commence discovery as ordered by this court–that at least some of the counsel with whom he was negotiating to assume his responsibilities as counsel for plaintiffs were insisting that they have charge of all future matters, including discovery–completely fails to excuse his failure to obey the

order of this court or to apply for relief therefrom. This inexcusable failure, combined with such previous lapses as the repeated failure to effect service of the various pleadings in this action and the admissions of counsel in connection with his motion to withdraw, leads me inescapably to the conclusion that the named plaintiffs herein are not adequate representatives for the more than 1,200 persons they seek to represent.[1] This requires that the class action certification granted in my October 30, 1979 Memorandum and Order be and it hereby is ORDERED revoked. Such revocation is expressly without prejudice to the right of the named plaintiffs to move again for class action certification at such time as they may feel themselves to be adequate representatives; furthermore, it is expressly ORDERED that such revocation does not restart the running of the statute of limitations as to any members of the plaintiff class not named as plaintiffs herein.[2] For these same reasons, it is hereby ORDERED that this action is dismissed for failure to prosecute unless plaintiffs shall have commenced discovery, as directed by my order of April 21, 1980, within 120 days of the entry of this Memorandum and Order.

1. As an example (which would be far from determinative by itself), a motion was returned before me October 20, 1980 seeking dismissal as to defendant Baker. No one appeared in opposition or otherwise on behalf of plaintiff class and the motion was granted.

2. Because such revocation is without prejudice, such does no more than return this action to its status prior to the actual granting of the motion for class certification but after such motion had been made. In particular, it is *not* intended that such revocation end the tolling of the statute of limitations in effect as to all members of the class since the commencement of this action.