**Akil AL–JUNDI, a/k/a Herbert Scott Deane, et al., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**The ESTATE OF Nelson A. ROCKEFELLER, et al., Defendants.**

**No. CIV–75–132E.**

United States District Court, W.D. New York.

Sept. 4, 1990.

Michael McCarthy, Buffalo, N.Y., Elizabeth Fink, Brooklyn, N.Y., Michael Deutsch, Chicago, Ill., for plaintiffs.

Jerome Rosenberg, Napanoch, N.Y., pro se.

Herbert Blyden, Buffalo, N.Y., pro se.

John Stenger, Buffalo, N.Y., Joshua Effron, Delmar, N.Y., Richard Moot, Irving Maghran, Jr., Buffalo, N.Y., Donald Berens, Jr., Albany, N.Y., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

On August 2, 1990 this Court by Memorandum and Order granted the plaintiffs' motion to substitute John S. Keller, Commissioner of Finance of Orange County, as the Administrator of the Estate of John Monahan, Deceased, in the place and stead of defendant John Monahan. *Sub silentio* but by necessary implication, said Order denied the motion made on behalf of defendant Monahan to dismiss the action as to him on the ground that the plaintiffs had failed to observe the temporal parameters of Rule 25(a)(1) of the Federal Rules of Civil Procedure.

Mr. Keller, represented by the attorney who had represented Monahan during his lifetime and Monahan's daughter in her opposition to the appointment of an administrator *ad litem,* now has asked this Court to state that said Order involves a controlling question or questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal therefrom may materially advance the ultimate disposition of this long-pending litigation.

■ Although the rule contemplates that such statements by a court shall be written—that is, embodied—in the order from which an immediate appeal is sought, it long has been settled in the Second Circuit—*Brown v. Bullock,* 294 F.2d 415 (1961); *Sperry Rand Corp. v. Bell Telephone Laboratories, Inc.,* 272 F.2d 29 (1959); *Mueller v. Rayon Consultants, Incorporated,* 271 F.2d 591 (1959)—and since 1967 generally that the 10-day period for applying to the appellate court for the entertainment of an appeal from an interlocutory order may run from the date of the amendment or resettlement of a district court's order so as to include therein the requested 28 U.S.C. § 1292(b) statements. See, Rule 5(a) of the Rules of Appellate Procedure. Thus, while section 1292(b) still requires that such statement be "in writing in such order"—*viz.,* the order from which the appeal is sought to be taken—, it can be embodied in an amended or resettled version thereof.

That an immediate appeal from this Court's granting of the plaintiffs' motion and denying of defendant Keller's motion may materially advance this litigation is patent given the current status of this lawsuit. The litigation has been ongoing for an exceedingly and unduly long time and had finally reached the point where this Court on December 14, 1989 set June 5, 1990 as the day certain for the start of what is projected as a jury trial of three or four months. Three of the four remaining defendants then—sequentially—moved to dismiss on the basis of each's qualified immunity. Due to such motions this Court on May 10, 1990 changed the trial-commencement date to July 10, 1990. Qualified immunity having been denied June 26, 1990 copies of such three defendants' notices of appeal were received July 3rd. On July 10th the trial date was tentatively shifted to August 7th although an earlier order (on July 5th) had stayed the trial pending dispositions of the appeals.

The order now sought to be appealed kept defendant Monahan's estate in the case but the litigation could not proceed due to the pending appeals. For the appellate court to consider also whether this Court's decision of August 2nd can be upheld would work no hurt to the progressing of the lawsuit. If such decision should be overturned and qualified immunity be accorded one or two or all three of the remaining defendants there will have been no wasting of this Court's time or efforts; only the plaintiffs (who have not been free of fault for the lengthy delays in bringing this case to trial) are damaged and, even

then, only if the trial proves their cause to be meritorious. If this Court's ruling as to defendant Monahan's estate is overturned and its rulings as to all three of the other defendants similarly treated, doing so now rather than after a lengthy trial would be most saving of the time and efforts of all.

Further, this Court opines that its Order of August 2nd does involve controlling questions of law as to which there is substantial ground for difference of opinion. The ruling "strays" from the literality of Rule 25(a)(1) of the Federal Rules of Civil Procedure—albeit, along a path indicated by various judicial signposts.

The pertinent portion of Rule 25(a)(1) reads as follows:

> "Unless the motion for substitution [of the proper parties] is made not later than 90 days after the death [of a party] is suggested upon the record by service of a statement of the fact of death as provided herein for the service of the motion [to wit, as provided in Rules 4 and 5], the action shall be dismissed as to the deceased party."

The present rule stems from a 1963 amendment. Theretofore it had provided a rigid two-year post-death period during which— and only during which—the substitution could be made despite excusable neglect on the party wishing to bring it about. See *Anderson v. Yungkau*, 329 U.S. 482, 67 S.Ct. 428, 91 L.Ed. 436 (1947); *Starnes v. Pennsylvania Railroad Company*, 295 F.2d 704 (2d Cir.1961), *cert. denied*, 369 U.S. 813, 82 S.Ct. 688, 7 L.Ed.2d 612 (1962); Report of Judicial Conference, 31 F.R.D. 638–639. The pre–1963 inflexibility had been emphasized by the express exception of the time for moving to substitute from the enlargements allowed to be granted under Rule 6(b). This exception also was deleted in 1963. This Court noted in an earlier decision in this case the following:

> "It has been repeatedly stated and held that the reason rule 25(a) was amended to its current form in 1963 was to avoid the harsh and unfair results that the former inflexible version of rule 25 occasionally mandated. See, *e.g., Advisory Committee Note* to rule 25; *Roscoe v.*

*Roscoe*, 379 F.2d 94, 99 (D.C.Cir.1967). '[T]he 90–day period was not intended to act as a bar to otherwise meritorious actions.' *Staggers v. Otto Gerdau Company*, 359 F.2d 292, 296 (2d Cir.1966). Adoption of the *Rende* [*v. Kay*, 415 F.2d 983 (D.C.Cir.1969)] rule would, on the facts of this case, promote this remedial flexibility. *See, National Equipment Rental v. Whitecraft Unlimited*, 75 F.R.D. 507 (E.D.N.Y.1977)." *Al–Jundi v. Rockefeller*, 88 F.R.D. 244, 247 (W.D. N.Y.1980).

Rockefeller's estate's motion to dismiss for failure to substitute timely was denied. *Id.*, at 248. Subsequently, this Court granted a motion by the substituted Estate of Rockefeller to dismiss the lawsuit as to it because Rockefeller as the Governor of the State of New York was clothed with qualified immunity and such dismissal was upheld on appeal. *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060 (2d Cir.1989). The appellate court merely noted in passing that, "[d]uring the pendency of the action, the Estate was substituted 'in the place and stead of defendant Rockefeller.' *Al–Jundi v. Rockefeller*, 88 F.R.D. 244, 245 (W.D.N. Y.1980)."

This Court in the 1980 decision was primarily concerned with whether the motion to substitute the estate had been timely made and, if it had not been, whether excusable neglect justified an enlargement pursuant to Fed.R.Civ.P. rule 6(b). While it was found that there had been such neglect, it had been found that there had not been any showing of prejudice in or to the administration of the estate or the distribution of its assets. See *Anderson v. Yungkau, supra*, 329 U.S. at 485–486, 67 S.Ct. at 430–431.

The equally-relied upon support for the 1980 decision was that the suggestion or statement of the fact of death was insufficient in that it "did not list the names of the executors of Rockefeller's estate, although this information should have been readily available to Stewart," the attorney who had represented defendant Rockefeller during his lifetime and who filed the motion to dismiss as to him and his estate due

to the plaintiffs' non-compliance with Rule 25(a)(1). *Al–Jundi v. Rockefeller, supra,* at 246–247. *Rende v. Kay, supra,* was cited and relied upon. In that case, brought to recover for personal injuries caused by an automobile accident, the defendant driver had died after the action had commenced. The defendant's attorney of record made the suggestion of death in court and with notice. Subsequently and in his own name he moved to dismiss the case as to the decedent because the plaintiffs had not moved to substitute. Thereupon, the plaintiffs moved to substitute and for a Rule 6(b) enlargement, asserting that the suggestion of death was defective in that it did not name the decedent's legal representative. The plaintiffs appealed from the trial court's dismissal of the lawsuit and the appellate court reversed and ordered the action's reinstatement. In support thereof the Court said:

> "The Advisory Committee [on Civil Rules], in outlining that suggestion of death could be made by 'the representative of the deceased party' plainly contemplated that the suggestion emanating from the side of the deceased would identify a representative of the estate, such as an executor or administrator, who could be substituted for the deceased as a party, with the action continued in the name of the representative.   * * *
>
> \*       \*       \*       \*       \*       \*
>
> "In our opinion the Rule, as amended, cannot fairly be construed * * * to make [the defendant's attorney's] suggestion of death operative to trigger the 90–day period even though he was neither a successor nor [a] representative of the deceased, and gave no indication of what person was available to be named in substitution as a representative of the deceased.   * * *
>
> " * * * The tactic of the defendant's attorney would place on plaintiff the burden, where no conventional representative was appointed for the estate in probate court, of instituting machinery in order to produce some representative of the estate ad litem * * *.
>
> \*       \*       \*       \*       \*       \*

> "No injustice results from the requirement that a suggestion of death identify the representative or successor of an estate who may be substituted as a party for the deceased before Rule 25(a)(1) may be invoked by those who represent or inherit from the deceased. If the heirs or counsel fear that delay may prejudice the litigation they may move promptly for appointment of a representative, perhaps a temporary representative, either under the law of the domicile or by special order in the court wherein the litigation is pending." *Id.,* at 985–986.

This Court's canvassing of the myriad judicial decisions which have had concern with rule 25(a)(1) yielded what at first appeared to be rulings made without rhyme or reason. However, further analysis shows such not to be true and that, while there are aberrations, the disparate results are explained by observing who is asking for what relief and for what purpose in the various litigative positions. One can gain relief from the 90–day restriction via a motion for enlargement made even after the expiration of the allotted time if one satisfies the court that the delay was the result of excusable neglect and the opponent fails to demonstrate that such relief would work undue prejudice. While most of the decisions involve lapses of time much shorter than that which occurred here, the greater lapse in this case is explained to a substantial degree by the opposition put forth by Monahan's family and his attorney to the plaintiffs' efforts to have an administrator *ad litem* appointed. Monahan's daughter, the Surrogate noted, opposed the plaintiffs' efforts to have the representative appointed while declining to be appointed herself. She acted the role of the "dog in the manger."

Similar obstructive efforts appeared. Monahan's attorney tried to establish a roadblock at the outset by alleging that there isn't any estate and there is and will not be anyone who can be substituted in the decedent's place. As an important aside, what is established clearly by such assertion is that there is no prejudice to

any heir, grantee, legatee, devisee or any other type of distributee of defendant Monahan because there is no detriment to the estate's assets by paying legal fees or satisfying any judgment because the well is dry. There are no assets which can be dissipated or detrimented by the action being carried forward against Monahan's representative. Monahan's attorney, when braced by this Court with such proposition in a recorded oral argument on August 24, 1990, staunchly asserted that this claimed lack of prejudice to the estate was not true. Pointedly, he did not say that there could be any monetary or other detriment to the estate or any holding-up of the estate's distribution of assets. He only proclaimed, vehemently, that what was involved was the honor of "Major Monahan," his longtime friend. He, the attorney, was going to do his best to see that it remained unsullied. As laudatory as such aim is, it does not present any quantum of undue prejudice such as should bar the plaintiffs' proceeding with their claims.[1]

■ A firm and conscionable rule that is distilled from the judicial decisions is that, when it is a defendant who has died and it is his heirs or distributees who wish to put an end to litigation which does not abate because of death, the various facets of rule 25(a)(1) must be satisfied. The statement of the fact of death must be made by a party or by the decedent's appointed representative. Monahan's attorney was neither and, in fact, no longer was Monahan's attorney because Monahan's death cut the umbilical cord. Death withdrew from the attorney every iota of authorization he had to act for or in Monahan's behalf. The statement must identify the person who has been named as the representative of the decedent's estate. The instant statement did not do so and, in fact, made it seem that there would not and could not be any such representative. As the required suggestion of death the statement by Monahan's attorney was a nullity. It could not and did not start the 90–day clock to running. Consequently, the plaintiffs' motion to substitute, delayed as it was, was timely. To the extent that it might be viewed as untimely, it is readily seen that the delay flowed from excusable neglect and without any undue prejudice to Monahan's heirs or distributees.

■ Because the correctness *vel non* of the decisions to deny dismissal and to allow substitution are of vital importance to the progressing of this lawsuit and its resolution may well advance the ultimate disposition thereof and because there admittedly is a substantial ground for a difference of opinion as to the rule which has been found to be the bottoming for its Order of August 2, 1990, it is hereby

ORDERED that the whole of said Order is incorporated herein by reference and as if it were fully here reproduced and that there is added thereto the findings and statements set forth in the immediately preceding paragraph.

---

**1.** If the attorney truly has such purpose, it would not be out-of-line to suggest that one best protects one's honor and reputation by remaining to fight and not by turning tail and fleeing the battleground.