993 F.2d 1547
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re Leslie Blume SCHLANSKY, Debtor.
Robert J. BROWN, Trustee, Plaintiff-Appellee,
v.
Harriett MURPHY, Defendant,
Marvin Henderson, Executor of the Estate of O.W. Henderson,
Defendant-Appellant.
 No. 92-5821.
 United States Court of Appeals, Sixth Circuit.
 May 11, 1993.
 
 Before GUY and NELSON, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Defendant, Marvin Henderson, the executor of the estate of O.W. Henderson, appeals the decision of the district court affirming an order of the bankruptcy court requiring remittance to the bankruptcy trustee of the amount of an overpayment made to decedent. Henderson raises the following allegations of error: (1) the bankruptcy court did not have jurisdiction over decedent in rendering its order; (2) the bankruptcy court did not have jurisdiction over decedent's estate in rendering its order; and (3) in ruling on a motion for reconsideration, the bankruptcy court could not adversely affect decedent's estate by rendering an order providing for relief beyond the scope of the relief sought in the motion. We reverse.
 
 I.
 
 2
 Leslie Schlansky filed for bankruptcy in February of 1986, and Robert Brown was subsequently appointed trustee of the bankruptcy estate. A farm located in Fayette County, Kentucky, became part of the estate. In May of 1987, Brown instituted an adversary action seeking a declaratory judgment to determine the interests of several parties in the farm. One defendant in the action was O.W. Henderson, holder of a mortgage security interest in the property.
 
 
 3
 In September of 1988, Brown obtained authorization from the bankruptcy court to sell the farm. It was duly sold for $270,969.90, and Brown filed a motion to distribute the proceeds. The motion was noticed for a July 19, 1989, hearing. However, the bankruptcy court, apparently by mistake, entered an order on July 11, 1989, compelling Brown to pay Henderson the sum of $84,795.70. At the July 19 hearing, Henderson asserted that he was actually entitled to $91,266.62. However, the July 11 order was left standing and no appeal was taken. On August 16, 1989, Brown paid Henderson $84,795.70.
 
 
 4
 Henderson died on September 28, 1989. His son, Marvin Henderson, was appointed executor of decedent's estate the following month. However, no substitution of parties was made in either the main bankruptcy case or in the adversary proceeding. O.W. Henderson's attorney of record, Jack Miller, continued to receive notices on his behalf.[1]
 
 
 5
 In February of 1990, two other creditors of Leslie Schlansky, the estate of Russell Michael and Harriett Schlansky Murphy, moved in the bankruptcy court for an order compelling Brown to distribute the remainder of the farm sale proceeds and for reconsideration of the amounts to be disbursed. The July 11, 1989, order provided for disbursement of $58,257.34 to the Michael estate and for $20,130.12 to Murphy. However, Brown had failed to pay either creditor. In addition, the two creditors asserted that the distribution to O.W. Henderson had been excessive because of an erroneous computation of interest.
 
 
 6
 A hearing on the motion was scheduled for April 25, 1990. As the death of O.W. Henderson was not known to the bankruptcy court, Marvin Henderson did not receive notification of the hearing.[2] However, the record intimates that he had been made aware of the proceeding; counsel for the Michael estate told the court that he had spoken to Marvin Henderson about the motion and had written to inform him that he needed to be present, ostensibly to protect the interests of his father. Apparently, none of the other creditors understood that O.W. Henderson had, in fact, died. Nonetheless, Marvin Henderson did not appear at the hearing, and O.W. Henderson's estate was not otherwise represented there. The Michael estate raised the issue of the interest calculation on O.W. Henderson's note at that time.
 
 
 7
 The bankruptcy court apparently learned of the death of O.W. Henderson at some point after the April 1990 hearing. On July 26, 1990, the court held that he had been overpaid by Brown in the amount of $6,656.78. It ordered the "personal representative" of Henderson's estate to remit this sum to Brown. (App. 47). Both Marvin Henderson and Jack Miller were notified of the court's determination.
 
 
 8
 Marvin Henderson and his attorney, Austin Mehr, made a strategic decision not to appeal the July 26 order to seek reconsideration. This strategy was based on the fact that the claim against O.W. Henderson's estate had not been asserted during the six-month period provided under Kentucky law for filing such claims. (App. 86). Consequently, the estate would have a state law defense against an attempt by Brown to recover the overpayment.
 
 
 9
 On September 17, 1990, Brown filed a proof of claim against O.W. Henderson's estate in the Fayette District Court. Four days later, Marvin Henderson notified Brown that the claim had been disallowed because it was not timely. Pursuant to state law requirements, Brown filed a complaint in Fayette Circuit Court on October 17, 1990. Marvin Henderson again contended that the claim was time barred. The Fayette Circuit Court ultimately rejected this defense and held, in accordance with the doctrine of res judicata, that the July 26, 1990, bankruptcy court order was binding upon the estate of O.W. Henderson.
 
 
 10
 As executor of the estate, Marvin Henderson returned to the bankruptcy court on January 10, 1992, and moved to substitute himself as a proper party for his late father. He also moved for reconsideration of the July 26, 1990, order. Following a hearing, the court denied the motion to reconsider on January 28, 1992. Marvin Henderson then appealed to the district court, which affirmed the action of the bankruptcy court. The instant appeal followed.
 
 II.
 
 11
 Marvin Henderson contends that the bankruptcy court did not have jurisdiction over decedent O.W. Henderson in ordering repayment of erroneously computed interest to the bankruptcy trustee. We need not address this issue in light of the bankruptcy court having directed its order to "O.W. Henderson, through his personal representative." (App. 47) (emphasis added).
 
 
 12
 In its decision affirming the bankruptcy court's denial of Marvin Henderson's motion to reconsider the order of July 26, 1990, the district court concluded that, "[w]hile one could argue" that the order as phrased was entered against the estate, "this was merely an acknowledgement of the death and ... the order was against Henderson personally." (App. 14).
 
 
 13
 Plaintiff urges that we adopt the district court's reading of the bankruptcy court's order. He asserts that, despite O.W. Henderson's death, Henderson remained a proper party in the case because no motion to substitute had ever been made and he had not been otherwise dismissed. See Bankruptcy Rule 7025; Rule 25(a) of the Federal Rules of Civil Procedure. As a result, the order should be seen as having been rendered against Henderson, over whom, in plaintiff's view, the court never relinquished personal jurisdiction.
 
 
 14
 Leaving aside the question of whether personal jurisdiction is possible when there is no longer a person, we are convinced that the "through his personal representative" language was intended as more than mere surplusage. The bankruptcy court appears to have recognized that any repayment of excess interest would have to be made from O.W. Henderson's estate, which was in probate. The claim for repayment thus became entangled in the affairs of his estate. Hence, the court sought to compel Henderson's "personal representative" to repay the bankruptcy trustee.[3]
 
 
 15
 Unfortunately, the bankruptcy court never acquired personal jurisdiction over O.W. Henderson's estate. The estate never had been before the court in any manner. Marvin Henderson, the executor of the estate, had not been substituted as a proper party at the time of the order. Consequently, the bankruptcy court could not oblige O.W. Henderson's "personal representative" to take any action whatsoever. Its July 26, 1990, order is void to the extent it attempts to do so.
 
 
 16
 While we are sympathetic to the situation that the bankruptcy court faced due to its real-world awareness of O.W. Henderson's death, it should not have gone ahead and tried to bind Henderson's "personal representative" through its order. The executor of an estate is responsible, in some fashion, to all the creditors of the estate. It was therefore imperative, if O.W. Henderson's estate was to be expressly subject to an adverse determination of the bankruptcy court, that Marvin Henderson, as executor, be substituted as a proper party. In this way, he would be able to assert the particular interests of his father's estate, as well as to protect indirectly those claimants against the estate standing outside the bankruptcy litigation.[4]
 
 
 17
 Deciding as we do, we make no pronouncement about the substance of the July 26, 1990, order. It may well be that the interest paid to O.W. Henderson was miscalculated and that remittance of certain sums to the bankruptcy trustee would be appropriate.[5] However, the case is remanded to the bankruptcy court for consideration of whether such an outcome is still appropriate now that Marvin Henderson has been substituted for his late father. The substitution was accomplished on February 12, 1992, a year and a half after the reimbursement order. It also was effectuated after Marvin Henderson already had filed a notice of appeal with the district court. Accordingly, his later substitution does not alter our decision in the case at bar.
 
 
 18
 REVERSED and REMANDED.
 
 WELLFORD, Senior Circuit Judge, concurring:
 
 19
 I concur in the result reached since I am confident that the bankruptcy judge will reach his decision after the Henderson Estate, once substituted as a party, has an opportunity to contest the interest adjustment. I am satisfied that the bankruptcy court will also properly take into account the state court judgment for the interest amount against the Henderson Estate.
 
 
 20
 I write separately, however, to express my concern about the ethics and propriety of Marvin L. Henderson acting as attorney for his father before his death and as executor after O.W. Henderson's death in September, 1989, under the circumstances of this case. The next month after the death, Marvin L. Henderson was appointed executor. He apparently knew that creditors in bankruptcy court had filed claims that the August, 1989 payment by Robert J. Brown, Trustee, to O.W. Henderson had been excessive and thus detrimental to other creditors. He apparently was well aware of adversary proceedings between Brown and his father with respect to the Leslie Schlansky bankruptcy estate.
 
 
 21
 Marvin Henderson was also aware, individually, as an heir of his father's estate, and as executor, that a hearing on the creditor's motion to settle the correct amount due O.W. Henderson, deceased, from the Schlansky bankruptcy estate was set in April, 1990. Marvin Henderson did not advise the bankruptcy court of his father's death, nor did he advise the creditors, who had contacted him, of this fact despite his being aware of their misapprehension that his father was still alive.
 
 
 22
 It seems evident that Henderson or his attorney decided to "lay low" and to tell no one about the facts of his father's death and his appointment as executor, with the intention of defeating Brown's claim by asserting the six-month Kentucky limitation on filing claims against the O.W. Henderson estate. It now appears that the Kentucky court did not allow this unsavory effort to succeed.
 
 
 23
 We reach the equitable result here by allowing Marvin Henderson, as executor for his father's estate, to be substituted as the proper party in place of O.W. Henderson, deceased, in the bankruptcy court proceedings.
 
 
 
 [1]
 Marvin Henderson also acted as O.W. Henderson's attorney in various matters; for example, he and Jack Miller prepared O.W. Henderson's July 19, 1989, Response to Trustee's Motion to Distribute Funds. (App. 23)
 
 
 [2]
 Notification had been provided to Jack Miller, consistent with the belief of the bankruptcy court that O.W. Henderson was still alive
 
 
 [3]
 Our reading of the bankruptcy court's order is supported by the treatment given the order by the Fayette Circuit Court. The circuit court found the bankruptcy court's determination to be res judicata, in part because it detected an "identity of the same parties" in the bankruptcy proceeding and in the state action. (Fayette Circuit Court Judgment, slip op. at 4 (Sept. 19, 1991)). It therefore "granted judgment against ... Marvin L. Henderson, Executor of the Estate of O.W. Henderson" in the amount of the bankruptcy trustee's claim. (Id.). Accordingly, the circuit court did not interpret the July 26, 1990, order as having been directed at O.W. Henderson personally, as the federal district court held. It is clear, however, the bankruptcy court never obtained jurisdiction over either the estate itself or over Marvin Henderson as executor
 
 
 [4]
 Plaintiff stresses that, in accordance with Bankruptcy Rule 7025 and Rule 25(a) of the Federal Rules of Civil Procedure, either Marvin Henderson or Jack Miller should have suggested O.W. Henderson's death on the record. This would have called attention to the need to substitute the executor of O.W. Henderson's estate as a proper party. However, Rule 25(a)(1), applicable to the case at bar, does not require the decedent's representative to so act. Any party may do so, as every party is charged with staying abreast of developments in litigation. As for whether Miller, as O.W. Henderson's attorney of record, had a special obligation to have made a suggestion of death, it has been held that the attorney for a deceased party has no such responsibility because his authority to represent the deceased is terminated at the time of his death. See Al-Jundi v. Rockefeller, 88 F.R.D. 244 (W.D.N.Y.1980). We agree with such a holding, though we emphasize that the decedent's attorney should take reasonable steps to protect his late client's interests, such as by endeavoring to contact the decedent's representative and informing him of the pending action. We also point out that there was good reason why Marvin Henderson, as executor of O.W. Henderson's estate, did not suggest his father's death on the record; he believed the bankruptcy court's July 11, 1989, order disbursing funds to be a final disposition of O.W. Henderson's claim against the Schlansky bankruptcy estate. When he later heard about the motion to reconsider filed by Harriett Schlansky Murphy and the estate of Russell Michael, he appears to have concluded that any claim against his father's estate would be time barred
 
 
 [5]
 We also note that the Fayette Circuit Court judgment against O.W. Henderson's estate for the amount of the overpaid interest remains in force