Jerry YOUNG, a/k/a Ramadan, Plaintiff,

v.

Terry L. PATRICE, Correction Officer at Green Haven Correctional Facility, Defendant.

No. 91 Civ. 0231 (RWS).

United States District Court, S.D. New York.

Sept. 14, 1993.

Jerry Young, plaintiff, pro se.

Robert Abrams, Atty. Gen., New York City (Marcie S. Mintz, Asst. Atty. Gen., of counsel), for defendant.

## OPINION

SWEET, District Judge.

Robert Abrams, the Attorney General of the State of New York and the attorney for the sole named Defendant, Terry L. Patrice ("Patrice"), a former correction officer at the Green Haven Correctional Facility ("Green Haven"), has moved for summary judgment on the grounds that the action abates upon the death of Patrice and is now moot. *Pro se* plaintiff Jerry Y. Young, a/k/a Ramadan ("Young") has cross-moved for an order requiring Defendant's attorney to produce Patrice's death certificate for *in camera* inspection, and that any failure to do so should be sanctionable in addition to sanctions for the filing of a frivolous motion. For the reasons given below, the Defendant's attorney's motion is denied, and Defendant's attorney is directed to submit a new statement to suggest the death on the record in conformity with Rule 25(a)(1) of the Federal Rules of Civil Procedure. Young's cross-motions for production of the death certificate and for sanctions are denied as well.

### Background

Young is and was an inmate in the custody of the New York Department of Correctional Services ("DOCS") who was incarcerated at Green Haven on April 3, 1990. Defendant Patrice was employed by DOCS and was serving as a correctional officer at Green Haven on that date. Young alleged that Patrice assaulted him and used excessive force on April 3, 1990 in the Special Housing Unit at Green Haven, allegedly fracturing his right hand and causing injuries to his head which Young claims have resulted in chronic headaches and eye pain.

Young filed a complaint against Patrice pursuant to 42 U.S.C. § 1983 on January 10, 1991, alleging that the assault was in violation of his rights under the 4th, 8th, and 14th Amendments of the U.S. Constitution, and requesting, *inter alia*, $150,000 in compensatory damages, $150,000 in punitive damages, and a transfer to another prison where his life "would not be in danger." Young was granted leave to file his complaint *in forma pauperis* on January 10, 1991.

The parties filed a final pretrial order in June, 1992. On April 9, 1993, the office of the Attorney General was notified that this case was scheduled for trial commencing on May 3, 1993. Defendant's attorney apparently attempted to contact Patrice that same day, and was advised that Patrice had died on March 29, 1993.

Defendant's attorney has alleged that he is unable to produce Patrice's death certificate in accordance with Young's request because such this document is not in the possession of DOCS. Instead, Defendant's attorney has submitted the sworn affidavit of Christopher P. Artuz, who identifies himself as the First Deputy Superintendent at Green Haven (the "Artuz Affidavit"), dated April 20, 1993, in connection with Defendant's attorney's notice of the statement of death pursuant to Rule 25(a)(1). The Artuz Affidavit states that Patrice died on March 29, 1993, and that the affiant was "unaware whether or not he died intestate." The Artuz Affidavit also states that:

> Patrice was sued in this action in his official capacity, and as a public officer. Therefore, there is no successor, as such, to his position, and accordingly no party may be substituted in his stead. In addition, since in this action plaintiff *pro se* alleges that [Correction officer] Patrice had assaulted him and/or used excessive force on April 3, 1990, there is no conduct for which appointment of a substituted party or successor is appropriate.

Because the Defendant's attorney in the moving papers has referred only to this affidavit, the Court will consider the Artuz Affidavit to be the statement suggesting the death of Patrice upon the record pursuant to Rule 25(a).

However, Young's original petition filed in 1991 stated Young sought compensatory damages against Patrice in his "individual personal capacity." Young has consistently adhered to this position: in an affidavit filed on June 26, 1992, Young states that the government's defense based upon the 11th Amendment is "inapplicable to the defendant Patrice in his individual capacity." Young reiterates this contention in his response to the Defendant's attorney's motion and his own cross-motions, although Young adds that because his action is against Patrice in his individual capacity, "therefore the state is his [Patrice's] successor for punitive and compensatory damages."

**Discussion**

Defendant's attorney has alleged that this action should be dismissed as moot, either because it abates upon the death of the defendant or because the plaintiff has failed to name a substitute within 90 days of the statement of death upon the record. The action is not moot, first because Young's § 1983 action is brought against Patrice in his personal capacity and therefore survives against his estate, and second because for reasons given below the Artuz Affidavit is insufficient to suggest death upon the record under Rule 25(a).

**I. *Young's Suit is Brought Against Patrice in his Personal Capacity***

Young's lawsuit is brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

An action pursuant to § 1983 against a public official may allege that the official was acting either in his private individual capacity (in which case the death of the defendant requires a motion for substitution under (a)(1)) or in his public capacity (in which case the automatic substitution provided for in (d)(1) applies). Young alleges that his action is the first; Defendant's attorney characterizes it as the second, and states that there is no appropriate successor to Patrice's position as "simply one of hundreds of correction officers at Green Haven."

The Supreme Court clarified the distinction between such suits in *Kentucky v. Graham*, 473 U.S. 159, 166 & n. 11, 105 S.Ct. 3099, 3105 & n. 11, 87 L.Ed.2d 114 (1985):

> [A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must

look to the government entity itself.... Should the official die pending final resolution of a personal-capacity action, the plaintiff would have to pursue his action against the decedent's estate.

In order to sue an official in his public capacity, a plaintiff must allege that the unconstitutional action represents an official policy of the entity:

> [A] government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy of custom, whether made by its lawmakers of by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Dep't of Social Services of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A government cannot be held liable merely because it employed a tortfeasor since, for *"[r]espondeat superior* or vicarious liability will not attach under § 1983," *Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *see also Oklahoma City v. Tuttle,* 471 U.S. 808, 824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). "The Supreme Court has made clear that § 1983 does not subject municipalities to liability whenever municipal employees go astray," *Walker v. City of New York,* 974 F.2d 293, 301 (2d Cir.1992).

■ On the other hand, "to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right," *Kentucky,* 473 U.S. at 166, 105 S.Ct. at 3105 (emphasis original).

> In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. "The course of proceedings" in such cases typically will indicate the nature of the liability sought to be imposed.

*Kentucky,* 473 U.S. at 167, n. 14, 105 S.Ct. at 3106, n. 14, quoting *Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 876, 83 L.Ed.2d 878 (1985).

Young has alleged that Patrice violated his Eighth Amendment right to freedom from cruel and unusual punishment by assaulting him without provocation for the purpose of inflicting pain, based on a personal bias against Young. Young has consistently stated that he has sued Patrice in his personal capacity.

■ Young has also requested monetary damages, which are available under § 1983 only in suits brought against officials in their individual capacities, since money damages against a state are barred by the 11th Amendment, *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64 n. 5, 109 S.Ct. 2304, 2308 n. 5, 105 L.Ed.2d 45 (1989); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989).

Finally, Young has alleged neither that Patrice was implementing an unconstitutional policy at Green Haven, nor any gross negligence in training which would amount to deliberate indifference to constitutional rights under *Canton,* 489 U.S. at 392, 109 S.Ct. at 1206, nor any other violations of his right by Green Haven as an entity. Instead, Young has alleged one instance of excessive force on the part of one correction officer, conduct which Young alleges was the result of that correction officer's personal animus against the prisoner. In short, "the course of proceedings" in this case establish that this is, precisely as Young claims it is, a suit against Patrice in his personal capacity. Young, therefore, has a right to pursue his claims against Patrice's estate.

## II. *The Artuz Affidavit Is Insufficient to Suggest the Defendant's Death Upon the Record under Rule 25*

■ Rule 25 of the Federal Rules of Civil Procedure provides in relevant part:

> (a)(1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judi-

cial district. Unless the motion for substitution is made no later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

(d)(1) When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party.

The Defendant's attorney alleges that this is an action under (d)(1), and offers the excuse that Patrice has no successor to explain the failure to substitute a party. However, because this is an action against Patrice in his individual capacity, the provisions of (a)(1) apply, and under Rule 25(a)(1), the statement of death submitted by the Government is insufficient. The statement of death must be filed and served according to Rule 25, which most courts (including this one) have interpreted to require at least the naming of the executors of the decedent's estate, see, e.g., *Grandbouche v. Lovell,* 913 F.2d 835 (10th Cir.1990); *Fariss v. Lynchburg Foundry,* 769 F.2d 958, 961 (4th Cir.1985); *McSurely v. McClellan,* 753 F.2d 88, 98 (D.C.Cir.), cert. denied, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); *Rende v. Kay,* 415 F.2d 983, 986 (D.C.Cir.1969); *Kaldawy v. Gold Service Movers, Inc.,* 129 F.R.D. 475 (S.D.N.Y.1990); *Gronowicz v. Leonard,* 109 F.R.D. 624, 627 (S.D.N.Y.1986), *Al–Jundi v. Rockefeller,* 88 F.R.D. 244, 248 (W.D.N.Y.1980) ("*Al–Jundi I*"); and *Al–Jundi v. Rockefeller,* 757 F.Supp. 206, 210 (W.D.N.Y.1990) ("*Al–Jundi II*"). The true successor of Patrice for the purposes of this action is Patrice's estate, and the executor of the estate is the proper party to be substituted as a successor (*Kentucky,* 473 U.S. at 166, n. 11, 105 S.Ct. at 3105, n. 11; *Al–Jundi I,* 88 F.R.D. at 245; *National Equipment Rental v. Whitecraft Unlimited,* 75 F.R.D. 507 (E.D.N.Y.1977). There is no indication in the papers filed by the government that the executors of Patrice's estate have been named or served.

To constitute a valid suggestion of death under Rule 25 and invoke the 90 day time limit, the suggestion of death must identify the representative or successor who may be substituted as a party.... Neither of these letters identifies the representative or successor who may be substituted for Mr. Gronowicz.... no valid suggestion of death has been made and the 90 day period did not commence.

*Gronowicz v. Leonard,* 109 F.R.D. at 627 (citations omitted).

Requiring the naming of and service upon the executors of the estate is still required even if this creates certain problems:

The result of our ruling is that is impossible to effectively serve a notice of the death of a party until a representative has been appointed, a contingency which, the defendants contend, is beyond the control of a surviving party. They argue that our ruling would require surviving parties to tolerate delay in the institution of proceedings to appoint a representative for a deceased party, no matter how lengthy or inexplicable. This contention is erroneous. Most, if not all, states by statute authorize a surviving party in a litigation to petition for the appointment of an administrator or executor for the estate of a deceased adversary. For example, in New York, the Surrogate's Court Procedure Act expressly authorizes a surviving party to petition for the appointment of an executor or administrator for the estate of a deceased adversary. See N.Y.Surr.Ct.Proc.Act §§ 1002(1), 1402(1)(c) (McKinney's 1990).

*Kaldawy,* 129 F.R.D. at 477 & n. 1 (service of order suspending action due to plaintiff's death upon decedent's attorney where attorney did not yet represent the estate was neither service upon party or non-party within meaning of rule 15(a)).

In *Al–Jundi I,* prisoners injured during the riots which took place at the Attica prison in New York in September, 1971, sued Nelson Rockefeller in his personal capacity for violating their rights while acting under the color of state law as governor of the state of New York. The petitioners were permitted to substitute the estate of Rockefeller after he died during the course of the action. *Id.,* 88 F.R.D. at 248. In denying the defen-

dants' motion to dismiss based on the plaintiff's failure to substitute within ninety days, the court found that the statement of death was ineffective for three reasons. The first was that the statement of death did not list the executors or successors to the defendant:

> [T]he statement of death did not list the names of the executors of Rockefeller's estate, although this information should have been readily available to Stewart [Rockefeller's attorney]. The Court holds that listing the successors or representatives of the estate when such information was readily available to the person making the statement was necessary to make the statement effective under rule 25, for otherwise an opposing party could be put to an unfair burden of locating and serving the representatives before the ninety-day period expired.

*Al–Jundi I*, 88 F.R.D. at 246–47.

The court also found that in the absence of knowledge of the executors, with a disputed factual issue as to whether Rockefeller's attorney had agreed to accept service for the estate, and in the absence of any prejudice to the estate, failure to substitute was excusable neglect which allowed for an extension of time under Rule 6(b), Fed.R.Civ.P.:

> Such a showing consists of a demonstration of good faith and "some reasonable basis for noncompliance within the time specified in the rules ... here no prejudice. Cantor's act was precisely the sort of unfortunate blunder for which Rule 6(b) was intended to make amends. Plaintiff's motion for substitution of Rockefeller's estate is granted.

*Id.* at 247.

Finally, the court in *Al–Jundi I* found that any statement of death filed by the deceased defendant's attorney was a nullity, simply because the attorney no longer represented a party to the action:

> The rule [Rule 25(a)(1)] carefully distinguishes between "parties" and "successors or representatives of deceased parties" and does not mention "deceased parties" themselves. I therefore interpret rule 25 as allowing a motion to substitute to be made either by the estate of the deceased party (presumably acting through counsel for the estate) or by any other party, but *not* by the deceased party herself or himself (act-

ing through counsel).... Stewart in his statement of death described himself as the attorney for the deceased party (and not for other parties) and now disclaims vigorously that he was and is not counsel to the estate. Under the interpretation just mentioned of Rule 25, these assertions render the statement of death filed by him a nullity.

*Id.* at 246. Accordingly, if the Attorney General's office no longer represents a party to this action, as the attorney for a non-party may not file a statement of death; but even if it were allowed to file such, the Artuz affidavit is clearly insufficient. Therefore, no effective statement suggesting Patrice's death upon the record has yet been filed in this case, and accordingly the 90–day period has not yet begun to run. Even if it has, however, Young's failure to name a substitute in the absence of the names of Patrice's executors would be excusable neglect under *Al–Jundi*.

The requirements for a statement suggesting death of the defendant upon the record were clarified still further in a later opinion in the same case, *Al–Jundi II*, allowing the substitution of the estate of Estate of Monahan in the place and stead of defendant John Monahan, a Major in the New York state police who had principally formulated the actual plan for retaking the prison from the inmates. *See Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1063 (2d Cir.1989). Relying upon *Al–Jundi I*, *Al–Jundi II* held that a statement of death filed by Monahan's attorney which stated that Monahan had no successor was a nullity:

> The statement of the fact of death must be made by a party or by the decedent's appointed representative. Monahan's attorney was neither.... The statement must identify the person who has been named as the representative of the decedent's estate. The instant statement did not do so and, in fact, made it seem that there would not and could not be any such representative. As the required suggestion of death the statement by Monahan's attorney was a nullity. It could not and did not start the 90–day clock to running. Consequently, the plaintiff's motion to sub-

stitute, delayed as it was, was timely. To the extent that it might be viewed as untimely, it is readily seen that the delay flowed from excusable neglect and without any undue prejudice to Monahan's heirs or distributees.

*Al–Jundi II,* 757 F.Supp. at 210. In light of these opinions, the Artuz Affidavit is clearly insufficient to suggest Patrice's death upon the record such as to require dismissal.

■ Although a new statement of death must be submitted if Patrice's death is to be suggested on the record, Young's motion for the production of a death certificate must be disregarded as well. Because an affidavit sworn according to Rule 25 as interpreted by the case law is sufficient to suggest death upon the record under the Federal Rules of Civil Procedure, there is no need for the production of a death certificate to the court for *in camera* inspection. In fact, a death certificate would be ineffective to suggest death upon the record unless it named the executors or representatives of the decedent's estate as the holdings of *Al–Jundi I* and *Al–Jundi II* have made clear. Therefore, no party to this action can be required to produce Patrice's death certificate under Rule 25, and accordingly Young's motion for sanctions in the event of non-production must be denied.

### III. *Sanctions*

■ Young has made a separate motion for sanctions on the grounds that defendant's attorney has filed a "frivolous motion," although he has not indicated the rule of law under which he wishes to see sanctions imposed. However, since the purpose of sanctions under 28 U.S.C. § 1927 is "to deter unnecessary delays in litigation," based on unreasonable and vexatious multiplying of actions, and since "an award made under § 1927 must be supported by a finding of bad faith," *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987), which has not been shown here, it is likely that Young is requesting sanctions under Rule 11 of the Federal Rules of Procedure. Accordingly, his motion for sanctions will be analyzed under the standards for Rule 11.

### A. *The Legal Standards Of Rule 11*

Rule 11 of the Federal Rules of Civil Procedure requires a federal court to impose sanctions against an attorney or party who signs a pleading, motion, or other paper, in violation of the requirement that the signer certifies:

to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

■ The Second Circuit has defined the standard to be applied in determining whether sanctions should be imposed for a violation of Rule 11:

Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. Simply put, subjective good faith no longer provides the safe harbor it once did.... [A] showing of subjective bad faith is no longer required to trigger the sanctions imposed by the rule. Rather, sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.... [W]here it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.

*Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985) (footnote omitted). Therefore, in applying Rule 11, courts must assess whether an attorney's conduct was objectively reasonable at the time he or she signed the pleading, motion,

or other paper. *See International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir.), *cert. denied sub nom. Golub v. Hydra Offshore, Inc.*, 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *Oliveri*, 803 F.2d at 1274–75; *Quadrozzi v. City of New York*, 127 F.R.D. 63, 79 (S.D.N.Y. 1989).

The substantive requirement imposed on an attorney or party by Rule 11 is that "[p]leadings, motions, and other papers must be justifiable at the time they are signed." *United States v. International Broth. of Teamsters*, 948 F.2d 1338, 1344 (2d Cir.1991). It follows, then, that a court must neither "allow hindsight to skew judgment" nor "countenance belated rationalizations concocted to conceal chicanery." *Id.*

### B. *Applying The Standards*

The contentions upon which the Defendants' motion are grounded are far from being so defective that it was patently clear at the time the motion and papers were signed that they had "absolutely no chance of success under the existing precedents" or that "no reasonable argument [could have been] advanced to extend, modify or reverse the law as it stands" to support those contentions. *Eastway*, 762 F.2d at 254.

Young has characterized the motion of Defendant's attorney as "frivolous." However, because the Defendant's attorney has consistently defended this action on the grounds that Patrice was acting under the good-faith impression that he was merely maintaining discipline and not violating any of Young's constitutional rights, the position of the moving papers that this action was brought against Patrice in his official capacity was neither unreasonable nor frivolous. Young himself has maintained that the State is Patrice's successor, a misconception of the law which reflects the difficulties of determining the distinctions between bringing suit against officials in their official or individual capacities. The requirement that the statement suggesting the defendant's death upon the record include the names of the successors or executors of the deceased's estate is one which is not apparent on the face of the Rule, and which has been read into it by courts. Accordingly, Defendant's attorney's motion

to dismiss this action as moot is not sanctionable under Rule 11. All motions for sanctions are denied.

### Conclusion

Defendant's attorney's motion to dismiss this action as moot is denied. If a new statement suggesting Patrice's death upon the record in conformity with the case law of the Second Circuit construing Rule 25, Fed. R.Civ.P. is filed, Young will then have 90 days in which to name a substitute defendant in this action in accordance with the executors or representatives designated in a correctly filed suggestion of death upon the record. In default of such a filing, Young may seek the appointment of an executor or administrator should he seek to pursue his action against Patrice's estate. Given his *pro se* status, Young is hereby granted 120 days for that purpose.

Young's motion for production of Patrice's death certificate is denied, and Young's motions for sanctions are denied as well.

It is so ordered.