**INTERNATIONAL CABLEVISION, INC., d/b/a Adelphia Cable, Plaintiff,**

v.

**John SYKES, Defendant.**

**No. 98–CV–1272C.**

United States District Court, W.D. New York.

April 22, 1997.

LeBoeuf, Lamb, Greene & MacRae, New York City (William G. Primps, Lorna M. McKenzie, of counsel), International Cablevision, Inc., Coudersport, PA (Randall D. Fisher, Athena Jamesson, of counsel), for Plaintiff.

Batt & Wiech, North Tonawanda, NY (Benjamin A. Wiech, of counsel), for Defendant.

CURTIN, District Judge.

## BACKGROUND

Plaintiff International Cablevision, Inc., d/b/a Adelphia Cable, commenced this action on December 13, 1990, seeking declaratory and injunctive relief and damages under 47 U.S.C. §§ 553 and 605 of the Cable Communications Policy Act of 1984. As part of a consolidated action, this Court granted plaintiff's motion for summary judgment on the section 553 claim, but dismissed plaintiff's section 605 claim. *International Cablevision v. Noel,* 859 F.Supp. 69, 77 (W.D.N.Y.1994), *vacated, International Cablevision v. Sykes,* 75 F.3d 123 (2d Cir.1996), *cert. denied, Noel v. International Cablevision Inc.,* — U.S. ——, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996). On January 26, 1996, the Second Circuit vacated this court's decision, finding that defendant John Sykes's conduct violated section 605(e)(4), and remanded the case for the imposition of mandatory damages under section 605(e). *International Cablevision v. Sykes,* 75 F.3d 123 (2d Cir.1996), *cert. denied, Noel v. International Cablevision Inc.,* — U.S. ——, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996).

On June 6, 1996, defendant died intestate. Apparently no estate was ever opened. Plaintiff contends that Mrs. Sandra L. Sykes received most of her husband's assets, whether by *inter vivos* transfer or otherwise (Item 43, p. 2). In compliance with an order of this court, Mrs. Sykes provided the court with an affidavit setting forth her current financial situation (Item 45). This affidavit reveals that Mrs. Sykes owns several residential properties and mortgages, which she had owned jointly with her husband, that she obtained ownership of a 1995 Chevrolet Corsica at her husband's death, and that she was the beneficiary of an insurance policy under which she received as much as $10,000 following her husband's death.

On June 24, 1996, George R. Blair, Jr., defendant's attorney in this action, sent a letter to plaintiff's attorney, William G. Primps, informing him that Mr. Sykes had passed away on June 6, 1996 (Item 48, ¶ 2). Mr. Blair sent a similar, if not the exact same,[1] letter to the court (Item 37). In the letter addressed to the court, Mr. Blair explained that he did not represent any of the Sykes family aside from Mr. John Sykes, and that he did not represent Mr. Sykes's estate. He further explained that based on his understanding of Fed.R.Civ.P. 25, he could not continue with the litigation. According to Mr. Primps's affidavit recounting the facts surrounding his learning of defendant's death (Item 48), on August 28, 1996, Mr. Blair sent Mr. Primps an affidavit once again informing him of defendant's death and providing him with a copy of defendant's death certificate. It appears as if this was a copy of the affidavit submitted by Mr. Blair in support of his motion to withdraw as counsel for the defendant, also dated August 28, 1996 (Item 39). In this affidavit, Mr. Blair stated that it was his understanding that he was unauthorized to serve notice of the fact of his late client's death, as he was no longer representative of the deceased party within Fed. R.Civ.P. 25 (Item 39, ¶¶ 4–5).

On October 1, 1996, this court granted Mr. Blair's motion to withdraw as counsel for the defendant (Item 41).

On November 22, 1996, plaintiff filed a motion for the substitution of Mrs. Sykes as defendant in this action in place of her late husband, pursuant to Fed.R.Civ.P. 25(a), for the limited purpose of imposing damages under 47 U.S.C. § 605(e) in accordance with the Second Circuit's mandate (Item 42). Plaintiff contends that Mrs. Sykes should be substituted as the defendant in this case because

---

**1.** It is not clear whether Mr. Primps received the same letter as did the court. At the bottom of the letter received by the court, Mr. Blair indicated that Mr. Primps was to receive a carbon copy. Since neither plaintiff nor Mrs. Sykes's attorney has supplied the court with a different letter, the court assumes that this is the same letter.

(1) the claim against John Sykes was not extinguished by his death, (2) Sandra Sykes is an appropriate representative for John Sykes, and (3) plaintiff's motion is timely. Sandra Sykes opposes the motion arguing that (1) the action should not survive the death of her husband, and (2) the motion for substitution is untimely. Mrs. Sykes does not challenge plaintiff's contention that she is an appropriate representative for her husband for the limited purpose of imposing damages.

## DISCUSSION

### I. Plaintiff's Motion to Substitute Was Timely

 Fed.R.Civ.P. 25(a) provides that:

If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party ... [and] shall be served on the parties as provided in Rule 5.... Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

The core issue in dispute in this case is whether Mr. Blair's June 24, 1996 letter constituted a formal suggestion of death pursuant to Rule 25(a). If the letter was a formal suggestion of death under the rule, then plaintiff's motion is untimely and the action must be dismissed.

 As plaintiff correctly points out, relevant case law holds that strict formalities must be observed in serving a formal suggestion of death. As Professor Moore explains:

The ninety-day time period in which a motion for substitution must be made does not begin to run until the death of the party has been suggested upon the record. The suggestion of death is made by service of a statement of the fact of the death upon the other parties and upon interested non-parties. A form for the suggestion of death upon the record is provided by Official Form 30. This requirement of a formal suggestion of death is absolutely nec-

essary to trigger the running of the ninety days. Actual knowledge of the party's death is not sufficient, nor is mention of the death in court proceedings or pleadings.

3B J. Moore, Moore's Federal Practice ¶ 25.06[3] at 25–49 (2d ed.1995) (footnotes citing cases omitted); see also 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1955 at 544 (2d ed.1986) (citing cases). The suggestion of death filing, however, is not effective if made by counsel for the party who has died. *Al–Jundi v. Estate of Rockefeller*, 757 F.Supp. 206, 210 (W.D.N.Y.1990) (Elfvin, J.) ("Death withdrew from the attorney every iota of authorization he had to act for or in [his client's] behalf."); *Smith v. Planas*, 151 F.R.D. 547, 549–50 (S.D.N.Y.1993). In addition, a valid suggestion of death must identify the representative or successor who may be substituted as a party. *Gronowicz v. Leonard*, 109 F.R.D. 624, 627 (S.D.N.Y.1986); *Smith*, 151 F.R.D. at 549.

· In the present case, Mr. Blair's June 24, 1996, letter to the court and Mr. Primps did not constitute a formal suggestion of death. First, Mr. Blair's letter was not properly served on opposing counsel and filed with the court according to the requirements of Rule 5. On its face, the letter is an informal notification of the death of Mr. Blair's client, motivated primarily by his interest in withdrawing from his representation of Mr. Sykes. In fact, it appears as if Mr. Primps merely received a carbon copy of Mr. Blair's letter to the court seeking advice on how he should proceed. Second, since the letter in question came from the deceased defendant's attorney, it is ineffective under case precedent. *Al–Jundi*, 757 F.Supp. at 210; *Smith v. Planas*, 151 F.R.D. at 549–50. Third, Mr. Blair's letter is an ineffective suggestion of death under Rule 25 since it failed to identify the representative or successor who may be substituted as a party. *Gronowicz*, 109 F.R.D. at 627. Fourth, Mr. Blair's own belief that he was unauthorized to serve notice of the fact of his late client's death, as he was no longer representative of the deceased party within Fed.R.Civ.P. 25 (Item 39, ¶¶ 4–5), seriously undermines Mrs. Sykes's argument

that his June 24, 1996, letter constituted a formal suggestion of death.

Since the letter did not constitute a formal suggestion of death on the record pursuant to Fed.R.Civ.P. 25(a), the ninety-day period for making a substitution did not begin to run on June 23, 1996. Neither party either served or filed any other documents which might constitute a formal suggestion of death until plaintiff filed the pending motion. The motion papers satisfy the Rule 25(a) requirements; consequently, the ninety-day period for substitution commenced on November 22, 1996, the date Mr. Primps filed plaintiff's motion to substitute. See *Gronowicz*, 109 F.R.D. at 627. Therefore, the filing of the present application was timely made.

## II. *Plaintiff's Claim Fails to Survive Defendant's Death*

Both parties correctly acknowledge that under federal common law, a federal cause of action survives the death of a party if it is remedial and not penal in nature. 3B J. Moore, Moore's Federal Practice ¶ 25.04[1] at 25–28 (2d ed.1996). Traditionally, the rule has been that actions for penalties do not survive the death of the plaintiff. *Schreiber v. Sharpless*, 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65 (1884). Thus, the court must determine whether section 605(e) of the Cable Communications Policy Act of 1984 is remedial or penal in nature. Plaintiff argues that the statute is unquestionably remedial, while Mrs. Sykes contends that it is primarily penal; however, neither party has supplied the court with any direct authority interpreting the particular statute. In *Sablowsky v. United States*, 101 F.2d 183 (3d Cir.1938), the Third Circuit interpreted the predecessor to 47 U.S.C. § 605 as being remedial in nature.[2] To the court's knowledge, there are no published decisions which have interpreted the current provisions of 47 U.S.C. § 605 regarding this particular question.

Both plaintiff and Mrs. Sykes have supplied the court with case authority for a three-prong test to determine whether a statute is remedial or penal in nature. Although each party has identified a different case for authority of the test, the substance of each test is identical. The test instructs that the court must consider the following three factors:

(a) whether the purpose of the statute was to redress individual wrongs or wrongs to the public;

(b) whether the recovery ran to the individual or the public;

(c) whether the recovery was disproportionate to the harm suffered.

*Ricca v. United Press International, Inc.*, 28 Fair Empl.Prac.Cas. (BNA) 1816, 1982 WL 31022 (S.D.N.Y.) (citing *James v. Home Construction of Mobile, Inc.*, 621 F.2d 727, 730 (5th Cir.1980)); *United States v. Edwards*, 667 F.Supp. 1204, 1212 (W.D.Tenn.1987) (citing *James*, 621 F.2d at 730).

Applying this test to the present case, plaintiff argues that the statute at issue is remedial in nature. First, plaintiff contends that the mandatory damages provided for by 47 U.S.C. § 605(e)(3)(C)(i)(II)[3] are designed to redress individual wrongs. Specifically, plaintiff argues that the provision is designed to compensate the plaintiff for its loss and to deter the defendant and others from future violations. *Time Warner Cable v. U.S. Cable T.V., Inc.*, 920 F.Supp. 321, 331 (E.D.N.Y. 1996); *Cablevision Systems New York City Corp. v. Faschitti*, 1996 WL 48689, at *2 (S.D.N.Y.). Second, plaintiff notes that the statute specifically directs that the mandated recovery run to the aggrieved party in the

---

**2.** The Cable Communications Policy Act of 1984 amended the Communications Act of 1934 to establish a national policy of regulating cable television. The preexisting law had provided an overall framework for the regulation of the communications industry; however it had been enacted well before the advent of cable television. The 1984 amendments did not completely transform the existing law, but rather updated it to incorporate new advancements in technology.

See H.R. REP. No. 98–934, at 19–20 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4656–57.

**3.** 47 U.S.C. § 605(e)(3)(C)(i)(II) states in relevant part:

for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

action. Third, plaintiff asserts that the statutory damages were enacted by Congress because of the difficulty in proving damages resulting from violations of section 605(e), and as such they are intended to approximate the damage caused by the violation and are not disproportionate to the harm caused. *Time Warner Cable*, 920 F.Supp. at 329.

Mrs. Sykes has not contested plaintiff's arguments regarding the first two prongs of the test. Her primary argument as to why this action should not survive her husband's death hinges upon the third prong. Specifically, she argues that the $10,000 minimum penalty proscribed under 47 U.S.C. § 605(e)(3)(C)(i)(II) is clearly disproportionate to the harm suffered. She contends that the actual damages suffered by plaintiff by her husband's alleged possession of an illegal cable conversion box are presumably modest (Item 51, p. 2). In addition, Mrs. Sykes cites *Fehrenbacher v. Quackenbush*, 759 F.Supp. 1516, 1521 (D.Kan.1991), a medical malpractice case, for the proposition that punitive damages which "are awarded to punish the wrongdoer for his malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs' " do not survive the death of the defendant. *Id.* (quoting *Wisker v. Hart*, 244 Kan. 36, 766 P.2d 168 (1988)).

Because there is so little authority on the statutory construction of 47 U.S.C. § 605(e)(3)(C)(i)(II), in order to rule on this motion properly, the court must first analyze the subsection's purpose. The language of 47 U.S.C. § 605(e)(4), which sets forth the prohibited conduct, and the language of section 605(e)(3)(C)(i)(II), which sets forth the applicable remedies and penalties, clearly demonstrates that the statute was designed to redress individual wrongs and that the recovery is to run to the aggrieved individual. Neither subsection mentions the public interest in any manner, and each emphasizes the rights and remedies of the aggrieved party. In addition, the majority of the other subsections of 47 U.S.C. § 605 emphasize the rights and remedies of the aggrieved party. The plaintiff is correct in noting that these provisions are designed to compensate the aggrieved party for its loss and to deter the defendant and others from future violations. Not only have the courts found this to be the case, see *Time Warner Cable*, 920 F.Supp. at 331; *Faschitti*, 1996 WL 48689, at *2, but the legislative history for the 1984 amendments explicitly indicates that Congress wanted to provide a strengthened statutory basis for protecting suppliers of subscription television, multipoint distribution services, and satellite communications and deterring piracy of these protected communications. See 130 CONG. REC. § 1 4285 (daily ed. Oct. 11, 1984) (statement of Sen. Packwood), *reprinted in* 1984 U.S.C.C.A.N. 4745—46. The legislative history also instructs that the amendments to 47 U.S.C. § 605 were "to leave undisturbed the case law that has developed confirming the broad reach of section 605 as a deterrent against piracy of protected communications." *Id.* at 4746.

Although Mrs. Sykes has not provided the court with much authority to support her argument, the court is sympathetic to her contention that the $10,000 minimum penalty proscribed under 47 U.S.C. § 605(e)(3)(C)(i)(II) is "clearly disproportionate to the harm suffered" because the actual damages suffered by plaintiff are presumably modest while the fine is severe (Item 51, p. 2). In response, plaintiff argues that the statutory damages were intended by Congress to approximate the actual monetary damage caused by a violation of § 605, and therefore are not disproportionate to the harm caused (Item 52, p. 2). In support of its argument, plaintiff cites *Time Warner Cable*, 920 F.Supp. at 329, in which a district court in the Eastern District of New York noted that "Congress had enacted the statutory damages because of the difficulty in proving damages resulting from the installation of a descrambler." With this case precedent in its corner, plaintiff has made no effort to prove the actual damages it suffered by the unauthorized use of a cable descrambler. Although the court does not dispute the original purpose of this damages provision, the court does not believe that Congress intended to allow plaintiffs to completely avoid the obligation to prove the actual damages that they have suffered as a result of the violation of the statute. The

court finds it very difficult to believe that one cable descrambler, even if it were used over a period of several years, could result in damages of over $10,000 to plaintiff. Plaintiff has sole access to the facts which relate to the true extent of damage it experienced as a result of Mr. Sykes' act; therefore, plaintiff, not defendant or Mrs. Sykes, should be required to set forth proof of the actual damages it suffered. Further, the court does not find plaintiff's argument that because Mrs. Sykes failed to cite any cases interpreting § 605(e)(3)(C)(i)(II) or any other federal statute she has failed to prove that the provision is penal in nature to be persuasive.

Thus, even though plaintiff is correct that § 605(e)(3)(C)(i)(II) is designed to redress individual wrongs and the recovery is intended to run to the aggrieved individual, the court believes that in the absence of any effort on the part of plaintiff to demonstrate the actual damages it suffered, the $10,000 minimum damages prescribed by the statute is disproportionate to the harm caused. Thus, under the three-prong standard articulated above, the court finds § 605(e)(3)(C)(i)(II) to be penal in nature. Consequently, plaintiff's damages claim against Mr. John Sykes abated with his death. Therefore, the motion of plaintiff for relief is denied.

### CONCLUSION

For the foregoing reasons, this court denies plaintiff's motion to substitute Mrs. Sandra L. Sykes as defendant in this action for the sole purpose of imposing damages under 47 U.S.C. § 605(e).

Pending is the motion of William G. Primps, Esq., seeking an order for enforcement of the mandate of the United States Court of Appeals for the Second Circuit (Item 30). In support of the motion, he has filed his own affidavit (Item 32), an affidavit of Athena Jamesson (Item 33), an affidavit of Daniel F. Lefkowitz (Item 34), and an affidavit of Darlene Lake (Item 35). The motion was filed on or about June 12, 1996, which was at about the same time that Mr. Sykes died. In view of the proceedings which have been concluded by the present order, defen-

dant has not filed an affidavit in opposition to plaintiff's motion as yet.

Because the court has found that plaintiff's claim abated with defendant's death, plaintiff's motion to enforce the Second Circuit's mandate is now moot.

So ordered.