**KINGVISION PAY PER VIEW, LTD., a Delaware corporation, Plaintiff,**

v.

**BOOM TOWN SALOON, INC., an Illinois corporation d/b/a Boom Town Saloon and Eugene Perry, individually, Defendant.**

No. 99 C 7710.

United States District Court, N.D. Illinois, Eastern Division.

April 28, 2000.

Jeffrey Robert Platt, Rolwes & Platt, Chicago, IL, for plaintiff.

Daniel K. Touhy, Timothy J. Touhy, Timothy J. Touhy & Associates, Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

SCHENKIER, United States Magistrate Judge.

This case arises out of a dispute concerning the closed-circuit telecast of a professional prizefight between Evander Holyfield and Michael Moorer on November 8, 1997, and associated under-card and preliminary bouts. Plaintiff KingVision Pay Per View, Ltd. ("KingVision") claims that it had the exclusive rights to exhibit and distribute that telecast, and that defendants Boom Town Saloon, Inc. ("Boom Town") and its owner/manager, Eugene Perry, violated those exclusive rights by willfully intercepting or receiving the signal for those fights, and then telecasting them without making proper payment to KingVision. Plaintiff alleges that in so doing, defendants have violated 47 U.S.C. §§ 553 and 605 of the Cable Communications Policy Act (the "Cable Act"), and seeks statutory damages, attorneys' fees and other relief.

■ Defendants seek a technical knockout of KingVision's claim, arguing that this complaint comes too late. Defendants claim that KingVision's Cable Act claims are governed by the Illinois two-year statute of limitations covering statutory penalties, codified at 735 ILCS 5/13–202. Accordingly, defendants have filed a motion to dismiss [doc. # 11–1] on the ground that the action is time-barred, as this complaint was filed slightly more than two years after the acts in question. Plaintiff counters that this Court should apply either the three-year statute of limitations found in the Copyright Act, 17 U.S.C. § 507(b); or the five-year statute of limitations provided by Illinois law for actions claiming conversion, codified at 735 ILCS 5/13–205, under either of which this action would be timely. The Court finds that KingVision has the better of this argument, and accordingly denies the motion to dismiss.[1]

---

1. As part of their reply memorandum in support of the motion to dismiss, defendants filed a motion to strike plaintiff's response doc. # 15–1, on the ground that it relies on several unpublished orders, issued by judges in the Northern District of Illinois, the Western District of Tennessee, and the Eastern District of Louisiana, that are unpublished or available only on LEXIS or WESTLAW. The only authority defendants offer in support of that motion is Rule 53(b)(2)(iv) of the Rules of the United States Court of Appeals for the Seventh Circuit, which provides that unpublished orders "shall not be cited or used as precedent" except to support claims of res judicata, collateral estoppel or law of the case. However, by its very terms, the Seventh Circuit rule pertains only to unpublished orders of the Seventh Circuit, and not to unpublished orders issued by other courts. *See Aetna Cas. and Surety Co. v. Kerr–McGee Chem. Corp.,* 875 F.2d 1252, 1255 n. 2 (7th Cir.1989) ("Circuit Rule 53 states only unpublished orders of *this* Court have no precedential value"). The Seventh Circuit further has noted that "[i]f there is no rule in the court rendering a

## I.

We begin with the observation that the only reason that there is any dispute about the applicable statute of limitations is that when enacting Sections 553 and 605 of the Cable Act, Congress failed to provide a statute of limitations. When that occurs, courts must look elsewhere to borrow a limitations period. *See Dell v. Board of Educ.*, 32 F.3d 1053, 1058 (7th Cir.1994). Generally, a federal court will look to the state in which the conduct occurred in order to borrow the most analogous state-law statute of limitations period. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355–56, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). However, a federal court instead may borrow a statute of limitations from federal law if it is "clearly more analogous to the legislation than the state statutes, ... and if the state statutes of limitation are 'unsatisfactory vehicles' for enforcing the federal law." *Dell*, 32 F.3d at 1058 (quoting *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 161, 171–72, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)).

In determining whether to select a federal rather than state statute of limitations, courts apply a "hierarchical inquiry" that asks three questions:

(1) whether a uniform statute of limitations is required, because the federal cause of action in question may " 'encompass numerous and diverse topics and subtopics' ";

(2) whether such a uniform limitations period should be derived from a state or federal source, an inquiry that requires consideration of whether the multistate character of the federal cause of action might give rise to application of multiple state statute of limitations periods, which would present the danger of forum shopping and would " 'virtually guarantee ... complex and expensive litigation over what should be a straightforward matter' "; and

(3) whether there is an analogous federal statute of limitations that "truly affords a 'closer fit' with the cause of action at issue than does any available state-law source."

*Lampf*, 501 U.S. at 356–58, 111 S.Ct. 2773 (citations omitted). In applying this analysis, federal courts must be mindful of the presumption that by its silence Congress ordinarily intends that state law be borrowed, and that resort to a federal statute of limitations is a " 'closely circumscribed exception' " to that presumption. *Dell*, 32 F.3d at 1058 (quoting *Lampf*, 501 U.S. at 356, 111 S.Ct. 2773 (citations omitted)).

In order to apply these principles to borrow the appropriate statute of limitations, we begin with an examination of the structure and purpose of Sections 553 and 605 of the Cable Act.[2]

---

decision limiting the precedential value of its opinions, those opinions may be cited and are entitled to whatever weight the persuasive force of their reasoning warrants." *Id.* There is no rule in the Northern District of Illinois barring citation to opinions that are published only on WESTLAW or LEXIS, and defendants have not brought to our attention any rule in the district courts in the Western District of Tennessee or the Eastern District of Louisiana barring citation to opinions of those courts that are unpublished or available only on those services.

Moreover, defendants' argument that two of the unpublished orders should not be considered because they are magistrate judge recommendations, and that defendants have no way of knowing whether those recommendations were ultimately adopted, is a nonstarter. One of the two cases was not a recommenda-

tion at all, but a memorandum opinion and order entered in a case where the parties had consented to the trial of the matter before the United States magistrate judge. *Kingvision Pay Per View, Ltd. v. Wilson*, 83 F.Supp.2d 914, 915 n. 2 (W.D.Tenn.2000). The other magistrate judge decision was a Report and Recommendation by now-District Judge Bucklo in *That's Entertainment of Illinois, Inc. v. Cental Video Path, Inc.*, No. 93 C 1471, 1993 U.S. Dist. Lexis 19488 (N.D.Ill.Dec. 9, 1993), which the publicly available docket sheet shows was accepted in full by the District Court by an order of February 7, 1994. For these reasons, defendants' motion to strike [doc. # 15–1] is denied.

**2.** Subsequent to the passage of these sections, Congress provided for a "default" statute of limitations. In the absence of a specific legis-

## II.

The legislative history reveals that "[o]ne of the primary purposes behind the enactment of [Sections 553 and 605] was to discourage the theft of cable services." *Kingvision Pay Per View, Ltd. v. Wilson,* 83 F.Supp.2d 914, 918 (W.D.Tenn.2000) (citing H.R. REP. NO. 98–934, at 84 (1984), U.S.Code Cong. & Admin.News 1984, p. 4655). To that end, Congress provided for a variety of penalties and remedies, designed "to protect the revenue of television cable companies from unauthorized reception of their transmissions." *Time Warner Entertainment/Advance–Newhouse Partnership v. Worldwide Elec., L.C.,* 50 F.Supp.2d 1288, 1293 (S.D.Fla. 1999) (quoting *United States v. Coyle,* 943 F.2d 424, 427 (4th Cir.1991)).

Section 553(a)(1) of the Cable Act provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Congress provided an array of criminal sanctions and civil remedies for violations of that provision. In Section 553(b), which is entitled "Penalties for Willful Violation," Congress provided a range of terms of imprisonment and fines. 47 U.S.C. § 553(b). In Section 553(c)(1), entitled "Civil Action in District Court; Injunctions; Damages; Attorneys' Fees and Costs; Regulation by States or Franchising Authorities," Congress granted a private right of action to "[a]ny person aggrieved by any violation of subsection (a)(1)." 47 U.S.C. § 553(c)(1). Section 553(c)(2) provides that a prevailing party may obtain injunctive relief, damages, and attorneys' fees and costs. 47 U.S.C. § 553(c)(2). Congress then went on to define the types of damages that may be recovered: either (1) actual damages suffered by the plaintiff as well as recovery of profits gained by the person who unlawfully intercepted the communications, or (2) statutory damages of an amount not less than $250 and not more than $10,000, "as the Court considers just." 47 U.S.C. § 553(c)(3)(A). Moreover, Congress provided the Court with the discretion to increase any damage award— "whether actual or statutory"—by an amount of not more than $50,000 if the violation was "committed willfully and for purposes of commercial advantage or private financial gain," 47 U.S.C. § 553(c)(3)(B), or to reduce the statutory or actual damages to an amount not less than $100 if the "violator was not aware and had no reason to believe that his acts constituted a violation of this Section." 47 U.S.C. § 553(c)(3)(C).

Section 605(a) provides, in relevant part, that

[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his

---

lative directive, the limitations period for any federal statutory cause of action is four years. *See* 28 U.S.C. § 1658. However, this catchall statute of limitations provision does not assist us in this case, as it applies only to laws enacted after December 1, 1990, and the relevant provisions of the Cable Act at issue here were enacted in 1984.

own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). Section 605(e), which is entitled "Penalties; civil actions; remedies; attorney's fees and costs; computation of damages; regulation by State and local authorities," provides a structure of criminal sanctions and civil remedies parallel to (but somewhat greater than) those set forth in Section 553, 47 U.S.C. § 605(e). Section 605(e)(1) and (2) provide for imprisonment and/or monetary fines for violations of Section 605(a). *See* 47 U.S.C. §§ 605(e)(1)-(2). Section 605(e)(3)(A) provides that persons aggrieved by violations of Section 605(a) may file suit, and Section 605(e)(3)(B) provides that a plaintiff may seek injunctive relief, damages, and attorneys' fees and costs. *See* 47 U.S.C. §§ 605(e)(3)(A)-(B). Similar to Section 553(c), Section 605(e)(3)(C) defines the "damages" recoverable as either (1) the plaintiff's actual damages plus the profits obtained by the violator, or (2) statutory damages of not less than $1,000 or not more than $10,000, in a specific amount as the Court considers just. *See* 47 U.S.C. § 605(e)(3)(C). Section 605 also provides that the actual or statutory damages may be increased by up to $100,000 for violations that are willful and for purposes of commercial advantage or private financial gain, or may be reduced to a sum of not less than $250 if the violator was not aware and had no reason to believe that his acts constituted a violation of the section. *See* 47 U.S.C. §§ 605(a)(3)(C)(ii)-(iii).

### III.

■ With this structure and purpose of Sections 553 and 605 of the Cable Act in mind, the Court turns to the question of what statute of limitations should apply. Defendants assert that the two-year Illinois statute of limitations covering statutory penalty provisions should apply. Plaintiff argues that the three-year statute of limitations found in the Copyright Act, 17 U.S.C. § 507(b), should apply. In the alternative, plaintiff argues that if a state-law statute of limitations applies, the most analogous Illinois statute of limitations would be the five-year statute of limitations that governs claims for conversion.

Courts have been divided as to whether to apply a federal or state statute of limitations to cases brought under Section 553 and 605. Two decisions (including one in this district) have applied the three-year statute of limitations found in the Copyright Act. *That's Entertainment of Illinois, Inc. v. Centel Videopath, Inc.,* No. 93 C 1471, 1993 U.S. Dist. LEXIS 19488, at *18–20 (N.D.Ill.Dec. 9, 1993); *Entertainment by J & J, Inc. v. Tia Maria Mexican Restaurant & Cantina, Inc.,* 97 F.Supp.2d 775, ——, 2000 WL 718307, at 10 (slip op.) (S.D.Tex.2000). In those decisions, the courts reasoned that the Copyright Act provided a "close fit" with the Cable Act: both statutes pertain to the theft of property, *see That's Entertainment,* 1993 U.S. Dist. LEXIS 19488, at *18; both statutes could apply to the same act of piracy of a communication signal, where the owner of the proprietary rights to the communication retains the copyright, *see id.;* and both the Copyright Act and the Cable Act contain similar damage structures, providing for either actual or statutory damages, at plaintiff's election, a discretionary increase or decrease in damages based on the level of a defendant's culpability, and an award of attorneys' fees and costs to the prevailing party. *See id.* at *19; *see also Entertainment by J & J, Inc.,* at ——, slip op. 10.[3]

---

**3.** In one case, the district court assumed, without deciding, that the statute of limitations contained in 47 U.S.C. § 415 applied. *See CSC Holdings, Inc. v. J.R.C. Prods., Inc.,* 78 F.Supp.2d 794, 802 (N.D.Ill.1999). However, defendants here have not argued that that two-year statute of limitations applies, and the decision in *That's Entertainment* provides a persuasive explanation as to why that statute of limitations does not apply to entities which, like defendants here, are not "common carriers." *That's Entertainment,* 1993 U.S. Dist. LEXIS 19488, *11–14, 18.

Several other decisions have applied state statutes of limitations governing claims for conversion. *See, e.g., Wilson,* 83 F.Supp.2d at 919; *Prostar v. Doe,* No. Civ. A. 99–1327, 2000 WL 158388, at *1 (E.D.La. Feb.10, 2000) (applying the Louisiana one-year statute of limitations for conversion); *Kingvision Pay Per View, Ltd. v. Bowers,* 36 F.Supp.2d 915, 918 (D.Kan.1998) (applying the Kansas two-year statute of limitations for conversion); *Joe Hand Promotions, Inc. v. Lott,* 971 F.Supp. 1058, 1063 (E.D.La.1997) (applying the Louisiana one-year statute of limitations for conversion).[4] Those cases reason that conduct in violation of Sections 553 and 605 of the Cable Act essentially involve a defendant stealing a broadcast signal and using it for his own benefit, which is tantamount to the state-law tort of conversion. *See, e.g., Wilson,* 83 F.Supp.2d at 919. Once finding an analogous state-law statute of limitations, those cases reject recourse to a federal statute of limitations. Applying the principle that use of a federal statute of limitations is a closely circumscribed exception to applying state-law statutes of limitations, *see, e.g., Agency Holding Corp.,* 483 U.S. at 147, 107 S.Ct. 2759, those courts conclude that the desire for uniformity in the face of possible multistate applications of the law is insufficient to override the traditional resort to state statutes of limitation: "[i]f, in fact, Congress wanted a national standard, it would have indicated that in the statute itself." *Wilson,* 83 F.Supp.2d at 919; *see also Lott,* 971 F.Supp. at 1063.

The foregoing conflicting decisions underscore the unfortunate uncertainty that is created when "the federal courts, left without guidance on an issue that is quintessentially legislative in nature, must 'borrow' a limitations period." *Dell,* 32 F.3d at 1058. However, in these circumstances, federal courts have no choice but to use the analytical tools available to them to fill in this gap left by Congress in the statuto-

ry framework. Upon review of the competing considerations reflected in these decisions, and mindful of the purposes of the Cable Act, this Court concludes that use of the Copyright Act statute of limitations is appropriate under the "hierarchical inquiry" established in *Lampf.*

Plainly, the Cable Act "encompass[es] numerous and diverse topics and subtopics," *Lampf,* 501 U.S. at 357, 111 S.Ct. 2773, such that the causes of action can be analogized to a variety of different state causes of action. Indeed, in *That's Entertainment,* 1993 U.S. Dist. LEXIS 19488, at *1, 16, the same conduct asserted as a violation of the Cable Act also was asserted to constitute the Illinois torts of tortious interference with prospective economic advantage, misrepresentation, civil conspiracy, and unjust enrichment. Moreover, causes of action under the Cable Act are multistate in nature: they involve communications in interstate commerce that can lead to violations taking place in multiple states, with the prospect of potential forum shopping if multiple state statutes of limitations were to apply. Those factors militate in favor of selecting a uniform limitations period by resorting to federal law. *See Lampf,* 501 U.S. at 357, 111 S.Ct. 2773.

This Court has considered the point made in *Wilson* that if Congress had wanted a national standard, it would have so indicated in the statute. *See Wilson,* 83 F.Supp.2d at 919 (citing *Joe Hand Promotions, Inc.,* 971 F.Supp. at 1063). However, the Court believes that that argument proves too much. In every case where the Court must determine whether to borrow a federal rather than a state statute of limitations, Congress was silent on the question. That is precisely when *Lampf* requires a federal court to determine if, notwithstanding that silence, the need for uniformity and the existence of a

---

**4.** In *Time Warner Cable v. Cable Box Wholesalers, Inc.,* 920 F.Supp. 1048, 1053 (D.Ariz. 1996), the parties stipulated that the Cable

Act claim would be governed by the one-year statute of limitations under Arizona law that applies to liability created by statute.

federal statute of limitations that provides a "closer fit" are sufficient to overcome the presumptive use of a state statute of limitations. To reject use of a federal statute of limitations merely because Congress failed to provide for one would result in a state statute of limitations always being selected, thereby rendering the *Lampf* analysis a nullity. Thus, we cannot agree with *Wilson* and *Joe Hand Promotions, Inc.* that congressional silence necessarily results in application of a state-law limitations period.

The Court also finds that the federal copyright statute of limitations truly affords a "closer fit," *Lampf,* 501 U.S. at 357, 111 S.Ct. 2773, with the cause of action under the Cable Act than does any available state-law statute of limitations. Certainly, it is true that the claim presented under the Cable Act is analogous to the common-law tort of conversion, in the sense that both deal with a specie of theft or misappropriation. *See, e.g., Colonial Funding, L.L.C. v. American Empire Surplus Lines Ins. Co.,* 308 Ill.App.3d 376, 241 Ill.Dec. 695, 719 N.E.2d 1098, 1100 (1999). However, claims under the Cable Act also are analogous to claims under the Copyright Act—the same conduct can violate both laws. Moreover, the remedial structure for violations of the Copyright Act far more closely parallels those set forth under the Cable Act than do the common-law conversion remedies. As with the Cable Act, there are provisions in the Copyright Act for criminal sanctions, *see* 17 U.S.C. § 506, injunctive relief, *see* 17 U.S.C. § 502, damages, *see* 17 U.S.C. § 504, and attorneys' fees and costs, *see* 17 U.S.C. § 505. With respect to damages, the Copyright Act, like the Cable Act, allows for recovery either the copyright owner's actual damages and the profits obtained by the infringer, or statutory damages. *See* 17 U.S.C. § 504(a). With respect to statutory damages, the Copyright Act provides for an award of no less than $500 and no more than $20,000 is available, in a specific amount as the Court considers just. And, as with the Cable Act, actual and statutory damages alike may be increased or decreased based on the culpability of the infringer's conduct. *See* 17 U.S.C. § 504(c).

In light of this congruence, not only of the nature of the causes of action provided by the Cable Act and the Copyright Act, but the striking similarity in the remedial framework provided under each statute, the Court finds that the Copyright Act provides a "closer fit" to the cause of action set forth in the Cable Act than does the common-law tort of conversion. When considered together with the substantial interest in a uniform statute of limitations, the Court finds that under the *Lampf* analysis, the three-year statute of limitations set forth in the Copyright Act should be applied to claims under Sections 553 and 605 of the Cable Act.

### IV.

The Court notes that even if the *Lampf* analysis dictated application of a state statute of limitations, the Court would apply the Illinois three-year statute of limitations governing conversion claims rather than, as defendants urge, the Illinois two-year statute of limitations covering statutory penalties. In order to decide which state statute of limitations is most analogous, a court at the threshold must "characterize the essence of the claim in the pending case." *Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). It is well-settled that "the matter of characterization should be treated as a federal question." *Id.* at 269, 105 S.Ct. 1938; *see also Harrison v. Digital Health Plan,* 183 F.3d 1235, 1239 (11th Cir.1999); *Aaron v. Brown Group, Inc.,* 80 F.3d 1220, 1223 (8th Cir.1996); *Central States, Southeast and Southwest Areas Pension Fund v. Jordan,* 873 F.2d 149, 152 (7th Cir.1989).

Thus, the Court looks to federal standards to determine whether the "essence" of Sections 553 and 605 of the Cable Act is that of a statutory penalty. Only if Sections 553 and 605 of the Cable Act are

primarily penalties rather than remedial provisions could the Illinois limitations for statutory penalties be conceivably applicable here. For the reasons set forth below, the Court finds that those provisions are primarily remedial.

The Seventh Circuit has not addressed the question of whether Sections 553 and 605 of the Cable Act are best characterized as "statutory penalties" for purposes of borrowing a statute of limitations. However, in *Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407, 415 (7th Cir. 1980), *overruled on different grounds by Pridegon v. Gates Credit Union*, 683 F.2d 182 (7th Cir.1982), the Seventh Circuit provided indirect guidance on the question in holding that another federal law that provides for the alternate remedies of actual or statutory damages—the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*—is not "penal" for survival purposes. In so holding, the Seventh Circuit recognized that "[t]here is no question that TILA creates a cause of action for civil penalty." *Smith*, 615 F.2d at 414. However, the appeals court concluded that TILA was not "penal" for survival purposes, based on three considerations.

*First*, the Seventh Circuit considered whether the purpose of actions under TILA "is to redress individual wrongs or wrongs to the public." *Id.* The appeals court found that although there was no doubt that TILA "has the effect of redressing a perceived social ill" arising from abuses in consumer credit transactions, the court found that the "primary purpose" of TILA actions is to redress individual wrongs. *Id.*

*Second*, the Seventh Circuit considered whether a recovery under TILA "runs to the individual or to the public." *Id.* Under TILA, the available damages are recoverable by the aggrieved parties authorized to bring suit, and this consideration thus also weighed against characterizing TILA as penal in character. *See id.*

*Third*, the appeals court considered whether the damage recoveries authorized under TILA were "wholly disproportionate to the harm suffered." *Id.; see also Schaefer v. H.B. Green Transp. Line*, 232 F.2d 415, 418 (7th Cir.1956) (an action is essentially penal in character " 'if the amount sought to be recovered is arbitrarily exacted for some act or omission of defendant' ") (citations omitted). The appeals court recognized that TILA provided for "multiple damages"—both actual damages and statutory damages within certain designated ranges for individual and class actions. *Smith*, 615 F.2d at 414. However, the Seventh Circuit found that the statutory damage structure was intended "to liquidate uncertain actual damages and to encourage victims to bring suit to redress violations," and was "not so severe as to render it penal." *Id.* at 415; *see also Murphy v. Household Fin. Co.*, 560 F.2d 206, 210–211 (6th Cir.1977) (finding survival for TILA claims).

In *Raydiola Music v. Revelation Rob, Inc.*, 729 F.Supp. 369 (D.Del.1990), the district court applied a similar analysis to find that statutory damage claims under the Copyright Act are not penal. The court reasoned that the essential purpose of statutory damages is not to punish, but rather to "remedy a wrong which would otherwise go unremedied if actual damages could not be proven." *Raydiola*, 729 F.Supp. at 375. The court also found significant the fact that the amount of statutory damages was not fixed, but rather was to be assessed within certain parameters based on the exercise of the court's discretion. *See id.* at 376.

Application of these considerations leads this Court to conclude that claims under Sections 553 and 605 of the Cable Act are not primarily penal in character. To be sure, the provision of criminal sanctions and enhanced civil damages based on heightened culpability may fairly be characterized as intended to punish. However, the availability of criminal sanctions sheds no light on whether the separate panoply of civil remedies are primarily penal in

character. Moreover, to say that the availability of enhanced civil damages based on heightened culpability renders the statute primarily penal would allow the tail to wag the dog. It is common for statutory schemes to provide for punitive or other enhanced damages based on findings of enhanced culpability, and that has not lead to those statutory provisions being deemed primarily penal in character. *See e.g., Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 398, 27 S.Ct. 65, 51 L.Ed. 241 (1906) (treble damages actions under the antitrust laws create civil remedies rather than penalties).

By providing that a plaintiff may seek recovery of actual damages, Congress clearly intended to provide aggrieved parties with a remedy. Thus, the real question is whether the availability of the alternative of statutory damages in Sections 553 and 605 transforms those provisions into ones that are primarily penalties. In the Court's view, the answer to that question is no. To use the language of *Smith*, 615 F.2d at 414, claims brought under Sections 553 and 605 are designed "to redress individual wrongs," and to provide for recovery that "runs to the individual," and not the public. Nor does the Court believe that the regime of statutory damages available under Sections 553 and 605 is so arbitrary, or so disproportionate to actual damages, as to render the essential character of those sections penal. Statutory damages are not provided as an addition or enhancement to actual damages, but as an alternative manner through which a prevailing plaintiff may obtain a recovery where a violation has occurred. Congress provided this alternative means of proving damages not as an arbitrary means of punishing a defendant, but "because of the difficulty in proving damages" in these types of cases. *International Cablevision, Inc. v. Sykes*, 172 F.R.D. 63, 68 (W.D.N.Y.1997). The fact that Sections 553 and 605 provide for a range of possible statutory damages to be set in the amount that "the Court considers just," rather

than in a preset fixed amount, further shows that the primary purpose of statutory damages is not to punish the defendant but—as in the Copyright Act—to provide a remedy if actual damages could not be proven. *Cf. Raydiola Music*, 729 F.Supp. at 375.

■ And, indeed, the cases decided under Sections 553 and 605 reveal that courts do not award statutory damages in a vacuum, but routinely attempt to tailor them to provide some rough approximation of the plaintiff's actual or threatened losses. *See, e.g., Cablevision Sys. New York City Corp. v. Lokshin*, 980 F.Supp. 107, 115 (E.D.N.Y. 1997) (setting statutory damages at a level to avoid a windfall to the defendant); *Time Warner Cable of New York City v. Olmo*, 977 F.Supp. 585, 589–90 (E.D.N.Y.1997) (fixing the amount of statutory damages to avoid an award that would be "demonstrably excessive," in light of the small scale of the defendant's conduct); *Columbia Cable TV Co., Inc. v. McCary*, 954 F.Supp. 124, 128 (D.S.C.1996) (setting statutory damages in an amount that the court found "likely to be a reasonable approximation of plaintiff's losses resulting from defendant's activities"). It well may be that in some cases the statutory damages represent only a "rough guess on the actual damages," *Marshall*, 970 F.2d at 385 (discussing TILA), but that does not alter the fact that the purpose of the statutory damage scheme is not to punish, but rather to ensure that a plaintiff does not lack a damage remedy for a proven violation of the Cable Act in those situations where damages may be difficult or impossible to quantify. As a result, this Court finds that the "essential character" of Sections 553 and 605 of the Cable Act is remedial rather than punitive, and that it would be inappropriate under any circumstance to borrow from state law the limitations periods governing statutory penalties.

The only case considering the question of whether to use a state-law limitations period for statutory penalties to govern

claims under the Cable Act declined to do so, and instead applied the limitations period for conversion actions. *See Bowers,* 36 F.Supp.2d at 918 (rejecting as "misguided" the assertion that the Kansas limitations period for statutory penalties should apply). One district court has construed Section 605 as penal in nature for purposes of determining the survival of claims under that provision. *See International Cablevision, Inc.,* 172 F.R.D. at 68–69. The court reached that conclusion despite acknowledging that actions under the Cable Act are intended to redress private wrongs by giving aggrieved persons a recovery, and that the "original purpose" of Congress was to provide statutory damages as an alternative remedy where actual damages could not readily be proven. *See id.* The court nonetheless concluded that in the absence of any attempt by the plaintiff to prove what actual damage was suffered, the minimum statutory damages award was "disproportionate to the harm suffered" and thus penal in nature. *Id.* at 69. However, the court seemed to contemplate a case-by-case consideration of survivorship, and that in cases where there was an effort to prove actual damages, a statutory damages award might not be "disproportionate," and a Cable Act claim would survive.

This Court expresses no view as to whether *Sykes* provides an acceptable approach to determining the survival of an action. However, the Court finds that the reasoning in *Sykes* fails to provide a convincing basis for concluding that, for statute of limitations purposes, Sections 553 and 605 of the Cable Act should be deemed "primarily penal" in nature. A statute of limitations is intended to promote certainty, so that all parties to a dispute know the deadline by which that dispute either must be brought to court or relinquished. A case-by-case approach such as that used in *Sykes* would undermine that fundamental purpose by varying the characterization of statutory damages, and thus varying the applicable limitations period selected, based on the quantum or quality of proof

of damages offered in any particular case. We believe that in determining the essential character of a claim for purposes of selecting a statute of limitations, a court must take a broader view. For the reasons explained above, and that the *Sykes* court acknowledged, the Court finds that the statutory damages scheme is essentially remedial in its original purpose and design, and in its application by the courts. Thus, the Court concludes that the Cable Act's damages scheme, which allows a prevailing plaintiff to recover either actual or statutory damages, is essentially remedial in character.

Accordingly, if the Court were to select a state-law statute of limitations, the Court would side with the cases applying the conversion statute of limitations. A conversion cause of action is more analogous to the Cable Act than a statutory penalty cause of action. Moreover, even if a single federal statute of limitations were not applied, the interests of uniformity would nonetheless militate in favor of selecting "a single variety of state actions" as the source of the statute of limitations. *Lampf,* 501 U.S. at 357, 111 S.Ct. 2773. That consideration would further weigh in favor of selecting the conversion statute of limitations, a result reached by virtually every court that has borrowed a state-law limitations period for Sections 553 and 605 of the Cable Act.

### V.

The conduct alleged in this case occurred on November 8, 1997, and this action was filed slightly more than two years thereafter, on November 29, 1999. The filing is timely either under the Copyright Act statute of limitations of three years, *see* 17 U.S.C. § 507(b), or under the five-year statute of limitations for conversion claims under Illinois. *See* 735 ILCS 5/13–205.

Accordingly, defendants' motions to dismiss [doc. # 11–1] and to strike [doc. # 15–1] are denied. Defendants shall file

their answer to the complaint on or before May 22, 2000. On or before May 25, 2000, the parties shall file with the Court a proposed discovery schedule. The previously set status in this case of May 30, 2000 at 10:00 a.m. remains in effect.